# United States Court of Appeals
## For the First Circuit

No. 03-2616


JOHN BRENEMAN and WILLIAM D. BRENEMAN,

Plaintiffs, Appellants,

v.

UNITED STATES ex. rel. THE FEDERAL AVIATION ADMINISTRATION;
COMMONWEALTH OF MASSACHUSETTS ex. rel. MASSACHUSETTS AERONAUTICS
COMMISSION; 70 ACRES OF LAND a/k/a TANNER HILLER AIRPORT,

Defendants, Appellees.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]


Before

Selya, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lipez, Circuit Judge.


William D. Breneman, with whom Breneman & Georges was on the brief, for appellants.
Anita Johnson, Assistant U.S. Attorney, with whom Michael J. Sullivan, United States Attorney, was on the brief for appellee United States, ex rel. Federal Aviation Administration.
Maria Hickey Jacobson, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, and Salvatore M. Giorlandino, Assistant Attorney General, were on the brief for appellee Commonwealth of Massachusetts, ex rel. Massachusetts Aeronautics Commission.
Richard T. Tucker, with whom Bernstein, Burwick & Tucker, LLC was on the brief, for appellee 70 Acres of Land, a/k/a The Tanner Hiller Airport.

August 25, 2004

**LIPEZ, Circuit Judge**.  In the continuation of a long legal battle, plaintiff landowners brought suit in December 2002 against the Massachusetts Aeronautics Commission (MAC), the Federal Aviation Administration (FAA) and Tanner Hiller Airport, a privately-owned facility, claiming that various actions taken by these entities infringed upon the landowners' property rights.  The district court granted the motions to dismiss of the three defendants, and dismissed the complaint with prejudice.  Concluding that the plaintiffs' claims were barred by principles of res judicata and sovereign immunity, we affirm.  We also grant the Airport's motion for fees and costs as a sanction for the plaintiffs' frivolous appeal of the decision in favor of the Airport.

## I.

In the late 1980s, the Airport hired a contractor to extend its runway closer to the boundary of the Brenemans' property.[1]  As part of that project, the contractor removed a fence, a hill, and other obstacles that were on the Brenemans' side of the property line.  The Brenemans allege that they discovered the alterations in 1991 and brought suit in the Massachusetts Superior Court in September 1992 for, inter alia, trespass,

---

[1]Although the property owned by the Brenemans is largely undeveloped, there is a residence on it.

conversion, and to quiet title against the Airport.[2]  See Breneman
v. Wolfson, No. WCV922705, 1999 WL 1203920 (Mass. Super. Ct. Oct.
21, 1999).[3]  They added the gravel company as a defendant in April
1997.  The court awarded summary judgment to the gravel company on
statute of limitations and repose grounds in Breneman v. Tanner,
No. 922705, 1999 WL 1336436 (Mass. Super. Ct. Feb. 1, 1999), and
granted summary judgment to the Airport on the same grounds a few
months later in Breneman v. Wolfson, No. WCV922705, 1999 WL 1203920
(Mass. Super. Ct. Oct. 21, 1999).

In late 1997, while their superior court case was
pending, the plaintiffs wrote a letter to the FAA, complaining that
they learned during discovery that the Airport's runway was longer
than the length listed in the New York Section Chart for Pilots,
the FAA's official directory of airports in that region.  The
agency apologized for the error and published a corrected version
of the sectional chart on May 18, 2000.

When the Brenemans learned of that correction, they filed
notices with the FAA and the MAC, proposing to construct a hill and
a boundary fence to replace the ones that the contractors had
removed.  The FAA responded with two hazard studies on January 5,

---

[2]The Airport filed a counterclaim in this action, claiming
that it had acquired the property through adverse possession.  The
court dismissed that claim without prejudice in response to a
stipulation from the parties that was docketed on April 2, 2001.

[3]We have provided a chronology of the various legal
proceedings in the appendix to this opinion.

2001, concluding that both proposed construction projects would create potential dangers to air traffic at the Airport. The hazard studies determined that the proposed ten foot high fence would exceed the "primary surface," an imaginary plane extending two hundred feet from the end of the runway that provides a safety buffer for aircraft, by thirteen feet, and that the proposed hill would exceed the "approach surface," an imaginary plane extending outward and upward from the end of the runway, by sixty-two feet.

After reviewing the FAA studies and providing the Brenemans with a public hearing, the MAC denied the Brenemans a permit to build the hill on August 15, 2001. The Brenemans challenged the MAC's denial of their permit in Worcester Superior Court, alleging that the commission violated Massachusetts law and that it took their property without due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article 10 of the Massachusetts Declaration of Rights. The court denied all of the Brenemans' claims. See Breneman v. Massachusetts Aeronautics Comm'n, No. 0101893B, 2004 WL 856640, (Mass. Super. Ct. Mar. 15, 2004).

On April 9, 2001, while their permit application with MAC was still pending, the Brenemans filed appeals of the FAA's hazard studies in the United States Court of Appeals for the D.C. Circuit. That court issued its unpublished decision on February 26, 2002, after the MAC denied the construction permit. Concluding that the

FAA's fence study was purely advisory in nature and that the plaintiffs had not suffered any actual harm from its publication, the court held that the Brenemans lacked standing to challenge that hazard determination. Breneman v. FAA, No. 01-1165, 2002 WL 449015 at *7-*8 (D.C. Cir. Feb. 26, 2002) (per curiam). Observing that MAC's denial of the Brenemans' hill permit was based in part on the FAA study, the court concluded that they had demonstrated a sufficiently concrete harm to establish standing with regard to the FAA hill study. However, the court concluded that the study was committed to agency discretion and thus was unreviewable under the Administrative Procedure Act ("A.P.A."). Id. The court also dismissed their "constitutional challenges" to the FAA's hill determination without identifying what those challenges were. Id. at *2. After reviewing the record from those proceedings, we conclude that the court was referring to the Brenemans' claim that the FAA should have granted them notice and an opportunity to comment while it was conducting the study.[4]

On December 13, 2002, the Brenemans continued their legal campaign by filing two more suits, this time in the United States Court of Federal Claims and the United States District Court for the District of Massachusetts. Their complaint in the Court of

---

[4]The court noted that the Brenemans violated the D.C. Circuit's "chutzpah doctrine" by challenging the propriety of the hazard study "when they conceded at oral argument that they intend to build the hill in part to impede air traffic at the Airport." Id. at *1.

-6-

Federal Claims alleged a physical and regulatory taking against the FAA.[5]  The physical taking claim was based on 49 U.S.C. § 40102(a)(32), which defines "navigable airspace" as including "airspace needed to ensure safety in takeoff and landing of aircraft."  The Brenemans alleged that the FAA's correction of the runway length in the updated sectional chart constituted a tacit approval of the runway extension.  Observing that this extension forced the runway primary surface beyond the property line, the Brenemans alleged that the FAA took title to their airspace and the first three feet of soil lying within two hundred feet of the end of the runway and converted it into navigable airspace.  They based their regulatory taking claim on the FAA's determination that the construction of the hill and the fence would create hazards for air travel.

The Court of Federal Claims rejected their physical taking claim, concluding that it could not find a precedent to support the proposition that "mere creation or recognition of navigable airspace" can result in a taking.  It denied their regulatory taking claim because the hazard reports were only

---

[5]The Brenemans filed their Court of Federal Claims action a few hours before they filed their Federal District Court complaint in an effort to maintain the Court of Federal Claims's subject matter jurisdiction over the case.  See 28 U.S.C. § 1500 ("The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . .").

advisory studies that had no enforceable legal effect. See Breneman v. United States, 57 Fed. Cl. 571 (2003), aff'd, No. 03-5156, 2004 WL 1153329 (Fed. Cir. May 10, 2004).

As stated, the Brenemans also filed a seven count federal complaint in the District of Massachusetts against the MAC, the FAA, and the Airport on the same day that they filed their complaint in the Court of Federal Claims. The complaint repeated the physical and regulatory takings claims[6] as well as the due process claim that it had previously litigated in the D.C. Circuit. It also included claims that 1) the hazard studies were substantively infirm; 2) the MAC and the Airport conspired to violate the Brenemans' constitutional rights by concealing the date on which the Airport extended its runway; and 3) all of the parties "appropriated and confused" the Brenemans' property rights. There was also a claim to quiet title against the FAA.

In dismissing the claims against the Airport, the district court summarily rejected the inverse condemnation, section 1983, and "use of property" claims by noting that these claims may not be brought against private parties. It interpreted the Brenemans' allegations that the actions of the defendants "constitute an appropriation and confusion of plaintiffs' property

---

[6]The count marked as "Inverse Condemnation" was actually a sprawling fifteen page, forty paragraph litany of grievances, including both physical and regulatory takings, lodged against the parties. The general thrust of that count seems to concern the inverse condemnation/regulatory taking.

with the Tanner Hiller Airport property" as possibly raising a trespass claim and dismissed that claim on statute of limitations grounds. Finally, it concluded that there was no support for the allegation that the MAC and the Airport conspired to violate the Brenemans' rights. The district court dismissed the allegations against the FAA and the MAC on res judicata and Eleventh Amendment grounds respectively. Breneman v. United States ex rel. the Fed. Aviation Admin., No. Civ. A02-12400RWZ, 2003 WL 22203684 (D. Mass. Sept. 23, 2003).

The Brenemans raise three claims on appeal. First, they claim that the district court improperly dismissed their quiet title claim against the FAA based on its erroneous conclusion that the Airport held actual possession of the disputed property.[7] Second, they claim that the court applied the wrong standard when it dismissed their takings claims against the FAA and the MAC. Third, they argue that the court failed to apply a sufficiently rigorous test to the MAC's claim of Eleventh Amendment immunity. They do not challenge the district court's dismissal of their claims against the Airport.

---

[7]The district court apparently viewed the quiet title claim directed at the FAA as a claim directed at the Airport. This error does not affect our disposition of this appeal.

## A. The Claims against the FAA

The Brenemans ignore the grounds upon which the district court dismissed their claims against the FAA. Rather than address the res judicata effects of the Court of Federal Claims decision, which formed the basis of the district court's opinion, they raise irrelevant arguments regarding the substantive standards that the court should have applied to their takings and quiet title claims against the FAA. Concluding that the district court's ruling regarding the res judicata effects of the Court of Federal Claims decision was correct, we ignore the Brenemans' extraneous arguments.

"Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 583 (1st Cir. 1995) (footnote omitted). Res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and . . . encourage[s] reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980). The elements of a res judicata claim under federal law are: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality

between the parties in the two actions." Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 16 (1st Cir. 2003). Recognizing that the judgment in the Court of Federal Claims was final and that the FAA and the Brenemans were both parties to the proceedings in the Court of Federal Claims and in the Federal District Court, we can quickly dispose of the first and third prongs. We apply a "transactional approach" to the second prong of this test: "The necessary identity will be found to exist if both sets of claims--those asserted in the earlier action and those asserted in the subsequent action--derive from a common nucleus of operative facts." Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994) (citation omitted).

We have no difficulty concluding that the Brenemans' claims are barred by the judgment in the Court of Federal Claims. The complaints in both proceedings were based upon the FAA's correction of the sectional chart and its publication of the two hazard studies; therefore, they both originated from a "common nucleus of operative facts." Indeed, it appears that the Brenemans essentially filed identical takings claims in both proceedings, and their quiet title claim seems to be a duplicate of the takings claims filed under a different heading.[8] Moreover, even if the

---

[8]The paragraph in the district court complaint that was most relevant to the quiet title action alleged that the United States claimed the "right to control and regulate portions of the surface, above the surface and below the surface of plaintiffs' property, which interferes with plaintiffs' right to use, possess, dispose

-11-

Brenemans did not raise the exact same claims in the Court of Federal Claims, we conclude that they could have litigated all of their claims against the FAA in the Court of Federal Claims. Without belaboring the analysis, we agree with the district court's admonition that "Plaintiffs cannot continue to file lawsuits until they obtain the result they seek." Breneman, 2003 WL 22203684, at *3.

**B. The Claims Against the MAC**

The Brenemans complain that the district court improperly dismissed their complaint against the MAC on Eleventh Amendment grounds without conducting a sufficiently detailed analysis of whether the commission is an "arm of the state." We conclude that the district court had a sufficient basis for concluding that the MAC was entitled to immunity.

We often employ a two-step test to determine if an entity is an "arm of the state." Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico and Caribbean Cardiovascular Ctr. Corp., 322

---

and enjoy their property as well as the requirements of [a Massachusetts statute] that plaintiffs return their property to its 'original condition.'" The complaint also alleged that the FAA and MAC studies and orders "have created a cloud on the title to plaintiffs' property by preventing plaintiffs from removing buried waste, restoring their land to its 'original condition.'" In a separate paragraph, they claim that the agencies "in regulating plaintiffs' property as an Airport have placed a cloud on plaintiffs' title to their property by dedicating to the public on behalf of the Tanner Hiller Airport rights to control use of the plaintiffs' land on the surface, above the surface and below the surface of plaintiffs' property."

F.3d 56, 65 (1st Cir. 2003). In the first step, we look at structural factors to determine whether "the state clearly structured the entity to share its sovereignty." Id. at 68. However, "[i]f the factors assessed in analyzing the structure point in different directions, then the dispositive question concerns the risk that the damages will be paid from the public treasury. . . . This analysis focuses on whether the state has legally or practically obligated itself to pay the entity's indebtedness." Id.

We have no difficulty concluding that the Commonwealth structured the MAC to share its sovereignty. As the district court noted, "[i]n their Complaint, plaintiffs state that defendant CMAC 'is an administrative agency of the Commonwealth of Massachusetts and acts for the Commonwealth of Massachusetts.'" Breneman, 2003 WL 22203684, at *4. Furthermore, according to the affidavit filed by Wayne C. Kerchner, MAC's Chief Legal Counsel, the commission is an agency within the Executive Office of Transportation and Construction, its operating budget is subject to appropriation by the General Court (the state legislature) with the approval of the governor, and its hearings and enforcement proceedings are subject to the State Administrative Procedure Act. Finally, according to Massachusetts statutory law, the governor appoints all of the MAC commissioners, and the commission has general police powers to regulate aeronautics through rules and regulations that have the

force of law. <u>See</u> Mass. Gen. Laws ch. 90, § 39. Concluding that the MAC is entitled to Eleventh Amendment immunity, we affirm the district court's dismissal of the Brenemans' claims.

## C. **The Airport's Motion for Costs**

Shortly after oral argument, the Airport filed a motion seeking $3,865.22 in attorney's fees and costs as a sanction for the Brenemans' appeal, and explaining its grievance:

> [I]t is clear from Breneman's [sic] Appellate Brief that the issues raised in this Appeal were directed to the other Appellees and not to the Airport. The Airport raised this in its Brief and at oral argument. As such the Breneman's Appeal as it relates to the Airport is insubstantial and not reasonably calculated to result in a change in the judgment as to the Airport.

In a subsequent response, without citing any authority, the Brenemans argued that the appellees cannot move for sanctions under Fed. R. App. P. 38 until a court has declared that their appeal was frivolous.

There is no validity to the Brenemans' claim. Rule 38 states: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion <u>or</u> notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." (emphasis added). There are two requirements here: 1) a court must determine that an appeal was frivolous and 2) the appellant must be given notice and an opportunity to respond before the imposition of sanctions.

-14-

Neither the text of the rule nor our case law requires a court to determine that an appeal was frivolous before an appellee can move for sanctions. However, the appellant must have notice of the request for sanctions and an opportunity to respond to it before the court imposes sanctions.

The Rules Advisory Committee added the notice and comment requirement to the rule in 1994 in response to the Supreme Court's admonition that sanctions "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." Roadway Express., Inc. v. Piper, 447 U.S. 752, 767 (1980). See Fed. R. App. P. 38 advisory committee's notes (1994). With regard to the first form of notice, a motion from one of the parties, the Committee explained:

> A separately filed motion requesting sanctions constitutes notice. A statement inserted in a party's brief that the party moves for sanctions is not sufficient notice. Requests in briefs for sanctions have become so commonplace that it is unrealistic to expect careful responses to such requests without any indication that the court is actually contemplating such measures. Only a motion, the purpose of which is to request sanctions, is sufficient.

Id. The Airport filed such a motion, and the Brenemans filed a detailed response to it. They have been afforded due process. We can turn to the merits of the Airport's motion.

The Airport's motion for sanctions did not allege that the Brenemans' entire appeal was frivolous; it simply argued that

their appeal "as it relates to the Airport is insubstantial and not reasonably calculated to result in a change in the judgment as to the Airport."  As our imposition of a sanction in Ochoa Realty Corp. v. Faria, 815 F.2d 812, 817-18 (1st Cir. 1987), demonstrates, the Airport did not have to prove that the entire appeal was frivolous in order to justify its request for sanctions.  Although the Brenemans forced the Airport to incur significant costs litigating this appeal by naming it as an adverse party in the docketing statement, they failed to explicitly address the district court's dismissal of their claims against the Airport.  Despite the Airport's repeated protestations, the Brenemans never explained why they considered the Airport to be an adverse party in this appeal.[9] As we noted in Ochoa Realty, "[w]e will not countenance frivolous impositions of this sort upon one's litigation adversaries."  Id. at 818.

The Airport submitted an affidavit documenting $3,420 in attorney's fees and $445.22 in costs that it incurred defending against the Brenemans' appeal.  We have no reason to question the reasonableness of these costs, and the Brenemans have not raised

[9]The Brenemans argued in their response to the Airport's motion for sanctions that "[t]he Airport is an indispensable party to this action due to its action in conspiring with the Government to convert Appellants' property into 'navigable airspace' and its inconsistent positions with respect to ownership of the Appellants' property."  Although the Brenemans alleged conspiracy theories in their complaint, they developed no argument on this issue on appeal.  That omission is the critical point for our sanctions analysis.

any issue as to reasonableness.  Convinced that a sanction of attorney's fees plus costs is required under the circumstances, we award $3,865.22 to the Airport.

## III.

We affirm the judgment of the district court.  We award attorney's fees and costs totaling $3,865.22 to appellee Tanner Hiller Airport.

**So ordered.**

**Appendix**

**Chronology of Proceedings**

September 25, 1992     The Brenemans file suit against Tanner Hiller Airport in Worcester Superior Court for, <u>inter alia</u>, trespass, conversion, and to quiet title.

April 18, 1997     The Brenemans amend their complaint, adding A. Amorello & Sons, Inc. gravel company as a primary defendant.

February 1, 1999     Worcester Superior Court grants summary judgment to A. Amorello & Sons, Inc. <u>Breneman</u> v. <u>Tanner</u>, No 922705, 1999 WL 1336436 (Mass. Super. Ct. Feb. 1, 1999).

October 21, 1999     Worcester Superior Court grants summary judgment to Tanner Hiller Airport . <u>Breneman</u> v. <u>Wolfson</u>, No. WCV922705, 1999 WL 1203920 (Mass. Super. Ct. Oct. 21, 1999).

January 5, 2001     The FAA issues two hazard studies in which it determines that the Brenemans' proposed hill and fence would create hazards to air travel.

April 9, 2001     The Brenemans appeal the FAA's hazard studies to the United States Court of Appeals for the D.C. Circuit.

August 15, 2001     The MAC denies the Brenemans' application for a permit to construct a hill on their property.

September 13, 2001     The Brenemans appeal the MAC decision to Worcester Superior Court.

December 13, 2002     The Brenemans file an action against the FAA in the United States Court of Federal Claims. Later that afternoon, they file an action against the FAA, MAC, and Tanner Hiller Airport in the United States District Court for the District of Massachusetts.

February 26, 2002     The D.C. Circuit dismisses the Brenemans' challenge to the FAA hazard studies.

-18-

Breneman v. FAA, No. 01-1165, 2002 WL 449015 at \*7-\*8 (D.C. Cir. Feb. 26, 2002).

August 6, 2003

The United States Court of Federal claims grants summary judgment to the FAA. Breneman v. United States, 57 Fed. Cl. 571 (2003) aff'd No. 03-5156, 2004 WL 1153329 (Fed. Cir. May 10, 2004).

September 23, 2003

The United States District Court for the District of Massachusetts issues the ruling under review in this appeal.

March 15, 2004

Worcester Superior Court dismisses the Brenemans' appeal of the MAC's denial of their permit to build a hill on their property. Breneman v. Massachusetts Aeronautics Com'n, No. 0101893B, 2004 WL 856640, (Mass. Super. Ct. Mar. 15, 2004).