MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2021 ME 1
Docket:      Pen-20-115
Argued:      November 19, 2020
Decided:     January 12, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

CAROL CUTTING

v.

DOWN EAST ORTHOPEDIC ASSOCIATES, P.A.

MEAD, J.

[¶1] Down East Orthopedic Associates, P.A. (Down East) appeals from an order of the Superior Court (Penobscot County, *Anderson, J.*) denying its motion to dismiss Carol Cutting's complaint for medical malpractice. Down East urges us to accept this appeal pursuant to the judicial economy exception to the final judgment rule, and it contends that the court erred in determining that the complaint was not barred by the claim preclusion branch of res judicata. Because this case involves complex questions of interpretation of state and federal claim preclusion law and Down East has not demonstrated unique circumstances, we conclude that the appeal does not come within the judicial economy exception. Accordingly, we dismiss the appeal.

## I. BACKGROUND

[¶2] The substantive facts are taken from the allegations in the complaint and viewed as if they were admitted, *see Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, and the procedural facts are drawn from the record. On June 20, 2013, Cutting went to see a doctor at Down East to address right shoulder pain. She informed the doctor that she had Tourette's syndrome and experienced vocal and motor tics that included "occasional arm movements and pointing." During the visit, the doctor moved across the room to distance himself because of Cutting's Tourette's, stating, "I don't want you to hit me."

[¶3] The doctor gave Cutting a diagnosis and told her that he would perform certain procedures but did not state that her Tourette's would affect his surgical approach. During the process of gaining Cutting's informed consent prior to surgery, providers at Down East did not discuss how her Tourette's might affect her surgery, including that, if a rotator cuff tear was found, the doctor would not repair it because the surgery would be "guaranteed to fail" due to the motor tics caused by her Tourette's. On November 13, 2013, the doctor performed a debridement of Cutting's shoulder area but did not repair the rotator cuff after discovering a tear. Cutting continued to experience shoulder pain and sought treatment from different providers; she ultimately

underwent surgery to repair the rotator cuff in 2015 and other procedures in 2018.

[¶4] In November 2016, Cutting filed a notice of claim against Down East in the Superior Court pursuant to the Maine Health Security Act (MHSA), *see* 24 M.R.S. § 2853 (2020), asserting negligence for failure to obtain informed consent, failure to obtain an updated MRI, and failure to repair the rotator cuff. She further alleged that the doctor's treatment of her violated the Americans with Disabilities Act (ADA), 42 U.S.C.S. §§ 12182-12213 (LEXIS through Pub. L. No. 116-259), and therefore amounted to a breach of the standard of care. Also in November 2016, Cutting filed a lawsuit in the United States District Court for the District of Maine (the federal discrimination case) alleging disability discrimination pursuant to the ADA and a violation of the Maine Human Rights Act, 5 M.R.S. §§ 4571-4634 (2020), asserting that the doctor "treated her in a disrespectful, rude, and insulting manner"; did not tell her that his approach to surgery would differ from his ordinary approach; and refused to repair the rotator cuff, all because of her Tourette's.

[¶5] In May 2018, the prelitigation screening panel issued its findings that Down East was not negligent. *See* 24 M.R.S. § 2855 (2020). Cutting then filed a medical malpractice case in federal court (the federal malpractice case)

4

asserting counts for failure to obtain informed consent and medical negligence and seeking a declaratory judgment that the panel proceedings violated her right to due process. She asserted that the federal court had federal question and supplemental jurisdiction pursuant to 28 U.S.C.S. §§ 1331, 1367 (LEXIS through Pub. L. No. 116-252).

[¶6] Cutting simultaneously filed a motion in the federal discrimination case to either join the two federal cases or amend the discrimination complaint to add her medical malpractice claims. In September 2018, after a conference among the federal court and the parties, the court issued an order stating that Cutting's motion to join or amend "is withdrawn without prejudice" and allowing Cutting to renew the motion after the court ruled on Down East's motion for summary judgment in the federal discrimination case and motion to dismiss in the federal malpractice case.

[¶7] On May 2, 2019, the federal court granted Down East's motion for summary judgment and entered judgment in Down East's favor in the federal discrimination case. On the same day, by separate order, it granted Down East's motion to dismiss the federal malpractice case for lack of subject matter jurisdiction. Thereafter, on May 30, 2019, Cutting filed the complaint giving rise

to this appeal in the Superior Court (the state malpractice case), asserting the same causes of action as those in her federal malpractice case.

[¶8]  Down East moved to dismiss the state malpractice case on, inter alia, claim preclusion grounds, arguing that Cutting litigated or could have litigated her medical malpractice claims in the federal discrimination case that was adjudicated on the merits.  Cutting opposed the motion and attached as exhibits the federal discrimination complaint, summary judgment order and judgment on the federal discrimination complaint, federal malpractice complaint, motion to join or amend, and order dismissing the federal malpractice complaint.[1]

[¶9]   In March 2020, after a hearing, the Superior Court denied Down East's motion to dismiss on claim preclusion grounds.  It determined that (1) Down East had failed to demonstrate that Cutting's claims were or could have been litigated in the federal discrimination case; (2) Cutting could not have litigated her medical malpractice claims until after the panel proceedings were finished; (3) Cutting tried to bring the claim in federal court but it was dismissed for lack of subject matter jurisdiction; and (4) Cutting committed "no

---

[1]  Notably, although the Superior Court considered "materials outside the pleadings, the proceeding was not transformed into a summary judgment proceeding because those materials were public records and their authenticity was not challenged." *Estate of Treworgy v. Comm'r, Dep't of Health and Hum. Servs.*, 2017 ME 179, ¶ 7 n.2, 169 A.3d 416.

6

procedural error or infirmity in proceeding as she did" in federal court. Down East timely appealed from the denial of its motion to dismiss on claim preclusion grounds. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶10] Res judicata "is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once." *Machias Sav. Bank v. Ramsdell*, 1997 ME 20, ¶ 11, 689 A.2d 595 (quotation marks omitted). When a matter has been litigated in state court, the claim preclusion branch of res judicata "bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Id.* (quotation marks omitted). We apply a "transactional test" when considering the third factor,

> examining the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong. In such circumstances, the newly pleaded claim is precluded even if the latest suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case. Claim preclusion does not, however, apply when a court reserves a party's right to maintain a second action, as happens when a court dismisses a claim without prejudice.

*Norton v. Town of Long Island*, 2005 ME 109, ¶ 18, 883 A.2d 889 (citations and quotation marks omitted).

[¶11]  However, "[i]n determining the preclusive effect of a federal court judgment, federal law controls." *Estate of Treworgy v. Comm'r, Dep't of Health and Hum. Servs.*, 2017 ME 179, ¶ 11, 169 A.3d 416 (quotation marks omitted). Pursuant to federal law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." *Breneman v. United States ex rel. FAA*, 381 F.3d 33, 38 (1st Cir. 2004) (quotation marks omitted).  The elements of claim preclusion in federal courts are "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *Id.* (quotation marks omitted).  Causes of action are considered identical "if both sets of claims . . . derive from a common nucleus of operative facts."  *Id.* (quotation marks omitted); *see Brown v. Osier*, 628 A.2d 125, 127-29 (Me. 1993) (applying the federal standard).  More specifically, "if [the claims asserted in two lawsuits] were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong, the two suits advanced the same

cause of action notwithstanding any differences in remedies sought or theories of recovery pleaded." *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991)*. But see id.* at 1167 ("In general, the rule requiring all claims arising from a single cause of action to be asserted in a single lawsuit will not apply if the plaintiff was unable to assert a particular claim or theory in the original case because of the limitations on the subject matter jurisdiction of the courts." (quotation marks omitted)).

[¶12] It is unclear, considering the facts and the current posture of this case, whether claim preclusion bars Cutting's state malpractice case. Down East asserts that federal claim preclusion law clearly bars Cutting's state malpractice action because her claims in both the federal discrimination case and the state malpractice case arise from the same facts. That is, Down East contends that the mere fact that Cutting's malpractice causes of action arise from the same events—and therefore the same "nucleus of operative facts," *Breneman*, 381 F.3d at 38 (quotation marks omitted)—that formed the basis for her federal discrimination claims precludes her state malpractice case.

[¶13] For her part, Cutting contends that her state malpractice claims are not precluded, even though they arose from the same nucleus of facts, because she *could not have* litigated them in the federal discrimination case considering

that (1) she had to first proceed through the prelitigation screening panel process in accordance with the MHSA and (2) when she attempted to litigate her malpractice claims in the federal court those efforts were blocked. Consequently, to decide the merits of this appeal, we would be called upon to decide the complicated questions of how state and federal claim preclusion law operate under the particular facts of this case, how the MHSA interacts with that law, and whether Cutting's claims should be precluded under the governing law.

[¶14]  This brings us to the threshold issue: whether we should reach the merits of this interlocutory appeal in the first instance.  "The denial of a motion to dismiss is not a final judgment, and ordinarily we would dismiss the appeal from the denial as an interlocutory appeal."  *Salerno v. Spectrum Med. Grp., P.A.*, 2019 ME 139, ¶ 7, 215 A.3d 804 (quotation marks omitted).

[¶15]  The final judgment rule is a judicially-created doctrine that "promotes judicial economy and curtails interruption, delay, duplication and harassment."  *Dep't of Hum. Servs. v. Lowatchie*, 569 A.2d 197, 199 (Me. 1990) (quotation marks omitted).  We will apply an exception and reach the merits of an interlocutory appeal where application of the rule "would not further its purpose." *Id.*

10

[¶16] Down East relies primarily on the judicial economy exception to the final judgment rule in arguing that we should reach the merits.[2] This exception "may be invoked in those rare cases in which appellate review of a non-final order can establish a final, or practically final, disposition of the entire litigation . . . [and] the interests of justice require that an immediate review be undertaken." *Town of Minot v. Starbird*, 2012 ME 25, ¶ 9, 39 A.3d 897 (quotation marks omitted).

[¶17] "We generally construe the exception's first requirement narrowly." *Forest Ecology Network v. Land Use Regul. Comm'n*, 2012 ME 36, ¶ 18, 39 A.3d 74. We do not "entertain as a matter of course all interlocutory appeals from rulings concerning res judicata or other affirmative defenses. On the contrary, we will review such appeals only in those situations in which the application of an affirmative defense is clear and an immediate review is necessary to promote judicial economy." *Norton v. Town of Long Island*, 2003 ME 25, ¶¶ 7-8, 816 A.2d 59 (citations and quotation marks omitted). Indeed, in *Norton*, where "th[e] appeal present[ed] complicated questions concerning res judicata's applicability," we declined to review the merits of the

---

[2] Down East briefly asserts that the death knell and collateral order exceptions also apply. We conclude that these bare assertions are without merit and do not warrant further discussion. *See Bruesewitz v. Grant*, 2007 ME 13, ¶¶ 7-8, 912 A.2d 1255 (reiterating the requirements for each exception to apply).

appeal. *Id.* ¶ 9; *see also Porrazzo v. Karofsky*, 1998 ME 182, ¶ 6, 714 A.2d 826 (declining to apply the judicial economy exception where the appeal "would [have] require[d] us to resolve complex legal issues involving conflict-of-law principles and the law of both Rhode Island and Massachusetts"); *Dep't of Hum. Servs. v. Hart*, 639 A.2d 107, 107-08 (Me. 1994) (dismissing an interlocutory appeal "because we ha[d] not yet resolved the question whether res judicata would apply in the circumstances of th[e] case").

[¶18] "Generally, we invoke the judicial economy exception when there are particularly unique circumstances in the history of a case such as exceedingly long litigation, multiple pending proceedings involving the same party, or litigation subject to inordinate delay." *Quirion v. Veilleux*, 2013 ME 50, ¶ 9, 65 A.3d 1287 (alteration and quotation marks omitted); *see also Liberty v. Bennett*, 2012 ME 81, ¶ 22, 46 A.3d 1141 (collecting cases exemplifying "[p]articularly unique circumstances"). Thus, we will reach the merits of the case when a decision could end the litigation *and* there is some additional reason to accept the appeal. *See, e.g., Forest Ecology Network*, 2012 ME 36, ¶ 23, 39 A.3d 74 (applying the judicial economy exception because "the denial of appellate review could result in unnecessary judicial interference with an extensive rulemaking process by an Executive Branch agency, thus burdening

12

the separation of powers," coupled with the "unprecedented and far-reaching effects of [the agency action] and the potential waste of extensive agency resources"); *Town of Minot*, 2012 ME 25, ¶¶ 9-10, 13, 39 A.3d 897 (reviewing the merits of an interlocutory appeal regarding the legal issue of whether the term "right-of-way" included a public easement because a decision, regardless of what the decision was, would dispose of the litigation and the case presented "unique and peculiar circumstances").

[¶19] Down East has not convinced us that this is the rare case that warrants the application of the judicial economy exception. Far from being a clear application of claim preclusion, *see Norton*, 2003 ME 25, ¶¶ 7-9, 816 A.2d 59, this appeal would require us to undertake a complex application of state and federal laws to the facts presented in order to determine whether Cutting's malpractice claims are precluded.

[¶20] Accordingly, we decline to accept this appeal pursuant to the judicial economy exception and dismiss it. *See Salerno*, 2019 ME 139, ¶ 7, 215 A.3d 804; *Norton*, 2003 ME 25, ¶¶ 7-9, 816 A.2d 59.

The entry is:

Appeal dismissed.

Russell B. Pierce, Jr., Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellant Down East Orthopedic Associates, P.A.

Laura H. White, Esq. (orally), White & Quinlan, LLC, Kennebunk, for appellee Carol Cutting

Penobscot County Superior Court docket number CV-2016-192
FOR CLERK REFERENCE ONLY