MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 7
Docket:        Han-25-125
Argued:        November 12, 2025
Decided:       February 5, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

JASON J. FOLLETTE

DOUGLAS, J.

[¶1]  Jason J. Follette appeals from an order of the trial court (Hancock County, *Stewart, J.*) denying his pretrial motion to dismiss charges based on crimes he allegedly committed in 1996.  The motion asserted that the State's delayed prosecution of the charges was barred by the statute of limitations or, alternatively, constitutes a violation of his Sixth Amendment right to a speedy trial.  We dismiss the appeal because it is interlocutory and does not fall within an exception to the final judgment rule.

## I.  BACKGROUND

[¶2]  In August 2002, the State filed a complaint charging "John Doe #1, Unknown Male with Matching Deoxyribonucleic Acid (DNA) Profile at

2

[13 specified][1] Genetic Locations" with gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(A) (Supp. 1996), gross sexual assault (Class B), 17-A M.R.S.A. § 253(2)(B) (Supp. 1996), and burglary of a motor vehicle (Class C), 17-A M.R.S.A. § 405(1) (Supp. 1996). The complaint alleged that the sex crimes were committed on August 11, 1996, and the burglary on October 3, 1996.

[¶3] Each offense was subject to a six-year statute of limitations. *See* 17-A M.R.S.A. § 8(2)(A) (1983). The complaint was filed on August 2, 2002, nine days prior to the expiration of the limitations period on the sexual assault charges and approximately sixty days prior to the expiration of the limitations period on the burglary charge. On the same day that the complaint was filed, an arrest warrant was issued for John Doe #1 with the specific DNA profile referenced.

[¶4] Over the ensuing twenty years, the field of forensic genetic genealogy underwent significant advancements. In 2022, law enforcement sent DNA samples from the scene to a private lab for further testing and genetic research. Based on the lab's analysis and additional investigative work, law enforcement eventually identified Jason J. Follette as the prime suspect in the

---

[1] The complaint's caption included a precise description of the specific loci of each genetic marker.

1996 crimes. An amended complaint was filed on November 8, 2022, naming Follette as the defendant and charging him with the same offenses first set out in the 2002 complaint. The court issued an arrest warrant on November 9, 2022. Follette was taken into custody the same day. The following day, he made his first appearance on the amended complaint and was subsequently released on bail.[2]

[¶5] Follette has filed numerous pretrial motions, including several motions to dismiss.[3] One of the motions to dismiss—the one that is the subject of this appeal—was based on his contention that the State was barred from prosecuting him for the 1996 crimes for two reasons: (1) the State failed to file a complaint specifically naming him as the accused within the applicable six-year period of limitations and (2) the delay of over twenty years in bringing him to trial on the charges violated his constitutional right to a speedy trial. After hearing, the court denied the motion, concluding that the filing of the 2002 complaint tolled the statute of limitations, thus enabling the State to proceed via an amended complaint naming Follette as the defendant. Further, the court

---

[2] On February 6, 2023, Follette waived indictment on the charges.

[3] Follette filed two motions to suppress evidence, a motion to dismiss following the granting of one of the motions to suppress, two motions for speedy trial, a motion for a Franks hearing, several motions related to discovery and/or asserting discovery violations (and requesting sanctions including dismissal), a motion to dismiss based on alleged improper judicial conduct, and the motion to dismiss based on statute of limitations and speedy trial grounds.

4

rejected Follette's argument that his constitutional right to a speedy trial was violated. Follette timely appealed the court's ruling. *See* M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶6] Follette contends that the court erred in denying his motion to dismiss, and he presses the same arguments on appeal that he made to the trial court, namely that the 2002 complaint was insufficiently specific to identify him such that it could not operate to toll the statute of limitations or, alternatively, if the 2002 complaint was sufficient to identify him so as to toll the statute of limitations, then the decades-long delay in holding a trial violated his constitutional right to a speedy trial as described in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Winchester v. State*, 2023 ME 23, 291 A.3d 707.

[¶7] Although, as Follette notes, this appeal presents "highly unusual" and "novel" issues, before reaching them we must make a preliminary determination as to whether his appeal is properly before us. This is an interlocutory appeal. Follette seeks review of the denial of a *pretrial* motion to dismiss. Even he acknowledges that "[n]ormally, a party cannot appeal a decision until a final judgment has been rendered."

[¶8] Indeed, we have "long noted that only final judgments are ripe for appellate review." *Dep't of Hum. Servs. v. Lowatchie*, 569 A.2d 197, 199

(Me. 1990); *see also State v. Black*, 2014 ME 55, ¶ 8, 90 A.3d 448; *Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 12, 974 A.2d 918. "[T]he final judgment rule prevents a party from appealing a trial court's decision on a motion before a final judgment has been rendered." *Subilia*, 2009 ME 71, ¶ 12, 974 A.2d 918. The rule is intended to "prevent[] piecemeal litigation," *Griswold v. Town of Denmark*, 2007 ME 93, ¶ 16, 927 A.2d 410 (quotation marks omitted); it "promotes judicial economy and curtails interruption, delay, duplication and harassment." *Lowatchie*, 569 A.2d at 199 (quotation marks omitted).

[¶9] These principles are no less applicable to interlocutory appeals from pretrial orders in criminal proceedings, and "[m]indful of the need to avoid disruptions of the criminal process," we have noted that interlocutory appeals "are especially inimical to the effective and fair administration of the criminal law." *Black*, 2014 ME 55, ¶¶ 8-9, 90 A.3d 448 (quotation marks omitted); *see also State v. Lemay*, 611 A.2d 67, 68 (Me. 1992).

[¶10] At the same time, we have recognized three "narrow and well-defined exceptions" to this rule—the judicial economy, the death knell, and the collateral order exceptions—that may justify appellate review prior to entry of a final judgment.[4] *Lemay*, 611 A.2d at 68; *see Subilia*, 2009 ME 71,

---

[4] The judicial economy exception to the final judgment rule "'may be invoked in those rare cases in which appellate review of a non-final order can establish a final, or practically final, disposition of

6

¶¶ 12-13, 974 A.2d 918. Follette invokes all three exceptions in arguing that we should hear this interlocutory appeal. We conclude that none apply.

[¶11] Generally, an appeal from the denial of a motion to dismiss based on the statute of limitations is "plainly interlocutory and not reviewable until a final judgment ha[s] been entered." *Porrazzo v. Karofsky*, 1998 ME 182, ¶5, 714 A.2d 826 (quotation marks omitted); *see also Tornesello v. Tisdale*, 2008 ME 84, ¶¶ 13-21, 948 A.2d 1244. Follette's urging us to hold otherwise finds little

---

the entire litigation . . . [and] the interests of justice require that an immediate review be undertaken.'" *Cutting v. Down E. Orthopedic Assocs.*, *P.A.*, 2021 ME 1, ¶ 16, 244 A.3d 226 (quoting *Town of Minot v. Starbird*, 2012 ME 25, ¶ 9, 39 A.3d 897). Notably, though, we "construe the exception's first requirement narrowly," *id.* ¶ 17 (quotation marks omitted), and will invoke this exception only when the "the application of an affirmative defense is clear and an immediate review is necessary to promote judicial economy." *Id.* (quotation marks omitted).

The death knell exception is justified "only if awaiting a final judgment will cause substantial rights of a party to be irreparably lost," meaning that an appeal will be permitted "only when the injury to the appellant's claimed right, absent appeal, would be imminent, concrete, and irreparable." *Carney v. Hancock County*, 2025 ME 36, ¶ 18, 334 A.2d 717 (quotation marks omitted). We have been unwilling to apply the death knell exception when the issue could be reviewed on an appeal from a final judgment. *See Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 17, 202 A.3d 1189.

The collateral order exception applies "'when the appellant can establish that (1) the decision is a final determination of a claim separable from the gravamen of the litigation; (2) it presents a major unsettled question of law; and (3) it would result in irreparable loss of the rights claimed, absent immediate review.'" *Bond v. Bond*, 2011 ME 105, ¶ 11, 30 A.3d 816 (quoting *Subilia*, 2009 ME 71, ¶ 25, 974 A.2d 918). It is "closely related to the death knell exception" because both require a showing that there will be a loss of substantial rights unless immediate review is afforded. *See Bond*, 2011 ME 105, ¶ 11, 30 A.3d 816.

Although we have recognized that "additional exceptions to the final judgment rule may be created if the extraordinary circumstances of a case warrant doing so," *Lowatchie*, 569 A.2d at 199; *see also Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74, 77 (Me. 1980) (concluding that to avoid "judicial interference with apparently legitimate executive department activity . . . and to safeguard the separation of powers," we will consider an interlocutory appeal), Follette has confirmed that he is expressly relying on the three standard exceptions referenced above. He has not asked that we consider creating a special exception here, nor would the circumstances presented justify doing so.

support in our jurisprudence and "runs into a wall of contrary authority" from other jurisdictions. *See United States v. Garib-Bazain*, 222 F.3d 17, 18 (1st Cir. 2000) and cases cited therein. It is commonly held, in other words, that "the statute of limitations is an ordinary defense and it can fully and fairly be vindicated by appeal after a final judgment." *Id.* at 18-19; *see also United States v. Pi*, 174 F.3d 745, 750 (6th Cir. 1999) ("It is well settled law that an order denying a motion to dismiss an indictment on statute of limitations grounds is not immediately appealable . . . .").

[¶12] More specifically, the judicial economy exception is unavailing here because its prerequisites demand *both* that appellate review would result in "a final, or practically final, disposition" of the entire case *and* that "the interests of justice require that an immediate review be undertaken." *See Cutting v. Down E. Orthopedic Assocs., P.A.*, 2021 ME 1, ¶ 16, 244 A.3d 226 (quotation marks omitted); *see also Liberty v. Bennett*, 2012 ME 81, ¶ 19, 46 A.3d 1141. The statute of limitations defense presented here is not the kind of "rare case" that meets the latter requirement. *See Lowatchie*, 569 A.2d at 201 n.1 (Hornby, J., dissenting). And although we have applied this exception where there are "particularly unique circumstances in the history of a case such as exceedingly long litigation, multiple pending proceedings involving the same

party, or litigation subject to inordinate delay," *Quirion v. Veilleux*, 2013 ME 50, ¶ 9, 65 A.3d 1287 (quotation marks and alterations omitted), we have done so sparingly and even then only when application of the defense was clear, because otherwise "it would ensure that every future trial court decision rejecting an affirmative defense would be appealed on an interlocutory basis." *Porrazzo*, 1998 ME 182, ¶ 6, 714 A.2d 826.

[¶13] Furthermore, neither the death knell exception nor the collateral order exception apply here because each exception requires a showing that substantial rights of a party will be irreparably lost if the issues are not addressed prior to trial. *See Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 17, 202 A.3d 1189 (holding that a "statute of limitation defense can be reviewed on an appeal from a final judgment, [so] no irreparable loss of right exists if the case proceeds to trial"); *see also United States v. Weiss*, 7 F.3d 1088, 1090-91 (2d Cir. 1993) (holding that appeal of a pretrial order denying a motion to dismiss on statute of limitations grounds does not involve a right that will be "irretrievably lost in the absence of an immediate appeal") (quotation marks omitted)). "[T]he statute of limitations is an ordinary defense and it can fully and fairly be vindicated by appeal after a final judgment." *Garib-Bazain*, 222 F.3d at 18-19.

[¶14]  The same reasoning persuades us that an interlocutory appeal of a pretrial motion to dismiss on speedy trial grounds likewise does not fall under any of the exceptions Follette advances.   Moreover, the constitutional dimension of the speedy trial right asserted does not alter our analysis, and this is consistent with decisions in other jurisdictions,[5] including the United States Supreme Court.  *See United States v. MacDonald*, 435 U.S. 850 (1978).

[¶15]  In *MacDonald*, for example, the Court rejected the contention that a defendant is entitled to interlocutory review of an order denying a motion to dismiss on constitutional speedy trial grounds.  *See* 435 U.S. at 856-57.  "[S]uch an order obviously is not final in the sense of terminating the criminal proceedings in the trial court," *id.* at 857, and the speedy trial clause does not provide a "'right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all," nor does "[p]roceeding with the trial . . . cause or compound the deprivation already suffered," *id.* at 860-61.  Put differently, "[i]t is the delay

---

[5]  *See, e.g.*, *State v. Malone*, 292 A.3d 1247, 1251-52 (Conn. 2023); *Owens v. Commonwealth*, 987 N.E.2d 1231, 1231-32 (Mass. 2013); *Sosniak v. State*, 734 S.E.2d 362, 367 (Ga. 2012); *State v. Hawk*, 170 S.W.3d 547, 553 (Tenn. 2005); *State v. Abernathy*, 969 N.W.2d 871, 878-95 (Neb. 2022); *State v. Rhoads*, 999 A.2d 1, 5 (Conn. App. Ct. 2010); *Commonwealth v. Bennett*, 345 A.2d 754, 757 (Pa. Super. Ct. 1975); *Taylor v. State*, 323 A.2d 648, 651 (Md. Ct. Spec. App. 1974).  *See also United States v. Esteras-Rosado*, 891 F.3d 1 (1st Cir. 2017).

before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial."[6]  *Id.* at 861.

[¶16]  Finally, endorsing appeals from pretrial denials of motions to dismiss on speedy trial grounds likely could have other adverse consequences that would undermine other values embedded in the Speedy Trial Clause itself:

> The right to a speedy trial . . . 'is generically different from any of the other rights enshrined in the Constitution for the protection of the accused' because 'there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused.'  Among other things, delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period in which defendants released on bail may commit other crimes.

*MacDonald*, 435 U.S. at 862 (quoting *Barker*, 407 U.S. at 519) (citations omitted).  And a defendant who appeals a denial of a pretrial motion to dismiss on speedy trial grounds would risk further delays in proceeding to trial if unsuccessful on appeal, and the assertions of such a violation "would become

---

[6] Consideration of the merits of an asserted speedy trial violation requires an evaluation of four factors: the length of the delay, the reasons for the delay, a defendant's assertion of the speedy trial right, and prejudice resulting from the delay.  *See Barker*, 407 U.S. at 530-32; *Winchester*, 2023 ME 23, ¶¶ 26-31, 291 A.3d 707.  While the first three factors may be relatively identifiable prior to a trial, the fourth, and pivotal, factor focuses largely on the impact of any delay on a defendant's ability to mount an effective defense.  *See Barker*, 407 U.S. at 532-33; *Winchester*, 2023 ME 23, ¶¶ 30-31, 291 A.3d 707.  Until the trial is held, "the degree to which delay has impaired an adequate defense tends to be speculative."  *MacDonald*, 435 U.S. at 858.

self-fulfilling prophecies during the period necessary for appeal." *MacDonald*, 436 U.S. at 862.

[¶17]  Accordingly, we determine that this interlocutory appeal fails to qualify for immediate review under an exception to the final judgment rule.

The entry is:

Appeal dismissed.

---

Donald F. Brown, Esq. (orally), Don Brown Law, P.C., Brewer, for appellant Jason J. Follette

Justine T. Barry, Asst. Dist. Atty. (orally), and Kirk Bloomer, Asst. Dist. Atty., Prosecutorial District 7, Ellsworth, for appellee State of Maine

Ellsworth District Court docket number CR-2002-910
For Clerk Reference Only