MAINE SUPREME JUDICIAL COURT                                 Reporter of Decisions
Decision:      2017 ME 152
Docket:        Was-16-240
Argued:        February 6, 2017
Decided:       July 11, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ROQUE ISLAND GARDNER HOMESTEAD CORPORATION

v.

TOWN OF JONESPORT

HJELM, J.

[¶1]  Roque Island Gardner Homestead Corporation ("RIHC") appeals from a judgment entered in the Superior Court (Washington County, *Stokes, J.*) affirming the Town of Jonesport Board of Appeals's denial of RIHC's request for a municipal tax abatement for 2014.  RIHC argues that evidence presented to the Board compels the conclusion that the Town's valuation of its property was unjustly discriminatory because the assessment rate for island structures—such as those on its land, Roque Island—is higher than for structures located on the mainland.  Because the record does not compel the conclusion that the rate differentiation is unjustly discriminatory, we affirm the judgment.

I. BACKGROUND

[¶2]  The Board of Appeals held a two-day hearing on RIHC's application for an abatement of its 2014 municipal property tax.[1]  At the hearing, the Board was presented with the following evidence.

[¶3]   RIHC, a nonprofit entity organized under Maine law, owns the entirety of Roque Island, which is located in the Town of Jonesport.  The property consists of 1,242 acres of land, with five houses and numerous outbuildings.  Roque Island is a homestead that has been owned by the same family since the early 1800s.

[¶4]  In 2010, the Town hired a certified private assessor and evaluator to conduct a revaluation of all properties in the Town.  The private assessor used "TRIO," which is State-approved assessment software, to develop property valuation formulae.  The TRIO formulae, which are differentiated by neighborhood, calculate separate land and building values for a given parcel. Those values are combined to determine a total assessed value for the property.

---

[1]   As provided by statute, in February 2015, RIHC submitted its abatement application to the municipal assessor.  *See* 36 M.R.S. § 841(1) (2016).  The municipal assessor did not take action on the abatement application within sixty days of its filing because, as she later explained to the Board, she had not completed her investigation into the matter within that period.  The application was thereby deemed denied, *see* 36 M.R.S. § 842 (2016), and RIHC pursued its application before the Board, *see* 36 M.R.S. § 843(1) (2016).

[¶5]   The calculations are a function of the character of the neighborhood where the property is located, so that, for example, the land values of shorefront property on the mainland are subject to a multiplier to reflect the greater market value of waterfront real estate.  In contrast, land values for island properties are calculated at a lower rate because those parcels are not benefitted by certain services that mainland properties receive.  Conversely, *building* values on islands are subject to an "economic obsolescence factor" of 200%—resulting in a greater assessed value than a comparable mainland structure would have—because of the additional cost of building on an island.[2]

[¶6]  The Town assessor testified that the 200% multiplier is used to determine the assessed value of island structures due to higher construction costs on islands, which results from the expense of transporting materials and workers—something she had confirmed through communications with building contractors, who reported that they double their regular charges for island construction.  The assessor further testified that she had learned from other municipal assessors that although other municipalities might not use an

---

[2]   The economic obsolescence factor for most, if not all, mainland properties in Jonesport is 100%, meaning that it has no effect on mainland building values.  Although the phrase "obsolescence factor" implies a reduction in value, as applied here it has the effect of *increasing* the assessed value.

4

economic obsolescence rate as Jonesport does, they employ other valuation techniques that result in higher assessments for island structures.[3]

[¶7]  Due to an oversight by the Town assessor's office, the economic obsolescence factor originating with the 2010 revaluation was not fully applied to the assessment of the structures on Roque Island until the 2014 tax year.  When the Town then applied the factor to the Roque Island property, its total valuation increased by 52% from the previous tax year.  RIHC sought an abatement from the resulting property tax increase, and when that application was constructively denied, it appealed to the Board.  *See supra* n.1.

[¶8]  On that appeal, RIHC contended that the 200% economic obsolescence factor for island buildings constituted unlawful discrimination and sought an abatement of $1,305,150 from the 2014 building valuation assessment of $2,609,846, which would result in a property tax reduction of nearly $20,000.  After deliberations during the public hearing, which was held in July and September 2016, and in a written decision, the Board denied RIHC's abatement application.  The Board concluded that once the 2010 revaluation formulae were applied to the Roque Island property for the

---

[3]  The Town assessor testified, for example, that for island properties, the Town of Southwest Harbor uses a "special neighborhood" designation to "arrive at the same idea" as the 200% multiplier; and in the City of Portland, instead of "a factor of two," the assessors apply "higher building grades and quality of construction and condition" to achieve a similar result.

2014 tax year, RIHC's "buildings were now being taxed consistently with other buildings on islands." The Board further found that although "there are no comparable islands in Jonesport" to Roque Island,[4] "other [t]owns in Maine assess buildings on islands at a significantly higher rate than buildings on the mainland."

[¶9] After the Board denied RIHC's motion for reconsideration, RIHC appealed to the Superior Court, *see* 30-A M.R.S. § 2691(3)(G) (2016); 36 M.R.S. § 843(1) (2016); M.R. Civ. P. 80B, which affirmed the Board's denial of the abatement appeal. RIHC timely appealed to us. *See* M.R. App. P. 2(b)(3); M.R. Civ. P. 80B(n).

## II. DISCUSSION

[¶10] RIHC argues that the Board erred in its decision denying an abatement because the Town's assessment of its buildings, calculated using the 200% economic obsolescence multiplier, is unjustly discriminatory and resulted in an unfair apportionment of the municipal tax burden.

[¶11] When the Superior Court has acted in its appellate capacity to review a decision of a municipal board of appeals, "we review the Board's

---

[4] During discussion at the hearing, one of the Board members stated that the structures on the other developed islands were camps and that only one had electricity from a source that was not portable.

6

decision directly for abuse of discretion, errors of law, and sufficient evidence." *Petrin v. Town of Scarborough*, 2016 ME 136, ¶ 13, 147 A.3d 842 (quotation marks omitted); *see also* M.R. Civ. P. 80B. Because the Board concluded that RIHC failed to meet its burden to prove that an abatement was merited, "we will vacate the Board's decision only if the record compels a contrary conclusion to the exclusion of any other inference." *Petrin*, 2016 ME 136, ¶ 16, 147 A.3d 842 (quotation marks omitted). "That the record contains evidence inconsistent with the result, or that inconsistent conclusions could be drawn from the evidence, does not render the Board's findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the Board's conclusion." *Terfloth v. Town of Scarborough*, 2014 ME 57, ¶ 10, 90 A.3d 1131 (alterations omitted) (quotation marks omitted).

[¶12] "A town's tax assessment is presumed to be valid." *Ram's Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, ¶ 9, 834 A.2d 916. To overcome this presumption, the taxpayer bears the burden of proving that the assessment is "manifestly wrong" by demonstrating that (1) the "property was substantially overvalued and an injustice resulted from the overvaluation"; (2) "there was unjust discrimination in the valuation of the

property"; or (3) "the assessment was fraudulent, dishonest, or illegal." *Petrin*, 2016 ME 136, ¶ 14, 147 A.3d 842 (quotation marks omitted).  Here, RIHC challenges the assessment solely on the basis of unjust discrimination.

[¶13]  The prohibition against unjust discrimination derives from the Maine Constitution, which provides that "[a]ll taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof," Me. Const. art. IX, § 8, and the federal Equal Protection Clause, U.S. Const. amend. XIV, § 1.  "To achieve an equitable distribution of the overall tax burden, assessors must apply a relatively uniform rate to all comparable properties in the district." *Petrin*, 2016 ME 136, ¶ 15, 147 A.3d 842 (alteration omitted) (quotation marks omitted).  Unjust discrimination occurs where "similarly situated properties" are taxed unequally, and is typically demonstrated through evidence of a practice that amounts to intentional "underassessment or overassessment of one set" of like properties.  *Delogu v. City of Portland*, 2004 ME 18, ¶ 12, 843 A.2d 33; *see Ram's Head*, 2003 ME 131, ¶ 11, 834 A.2d 916.

[¶14]  In its effort to prove an unjustly discriminatory valuation, RIHC has invoked the analytical model we approved in *Ram's Head*, wherein a

taxpayer may present evidence that "parcels owned by other taxpayers 'are assessed at drastically lower valuations; that there are no distinctions between the two sets of properties that justify the disparity; and that any rationale offered by the Town for the lower valuations is unfounded or arbitrary.'" *Petrin*, 2016 ME 136, ¶ 25, 147 A.3d 842 (alterations omitted) (quoting *Ram's Head*, 2003 ME 131, ¶ 12, 834 A.2d 916). RIHC asserts that its structures are taxed at a higher rate than similarly situated structures on mainland properties and that, as an owner of island structures, it consequently bears a disproportionate share of the municipal tax burden.

[¶15] "[O]nly similarly situated properties must receive approximately equivalent tax treatment . . . ." *Town of Bristol Taxpayers' Ass'n v. Bd. of Selectmen/Assessors for Bristol*, 2008 ME 159, ¶ 11, 957 A.2d 977. Unjust discrimination does not exist where "properties [are] treated differently from properties in other areas of Town that [are] not similar to their own." *Id.* ¶ 12; *see also Angell Family 2012 Prouts Neck Tr. v. Town of Scarborough*, 2016 ME 152, ¶¶ 32-33, 149 A.3d 271. Here, the Town assessor explained to the Board that islands are considered "a separate neighborhood." The structures on all developed islands in Jonesport are subject to the same 200% economic obsolescence factor that is applied to the valuation of buildings on

Roque Island. Therefore, the Roque Island property *was* treated like other, similarly situated properties.

[¶16] Further, the Board was not compelled to conclude that island structures are similarly situated to those on mainland property, to which the multiplier is not applied. *See Angell Family*, 2016 ME 152, ¶ 13, 149 A.3d 271. Although Jonesport's island *land* valuations are reduced because those parcels receive fewer municipal services than their mainland counterparts, the assessment of island *structures* is higher because of greater building costs.[5] The Town assessor told the Board that several contractors advised her that they generally charge double for island construction projects compared to what they charge on the mainland. Additionally, the Town assessor told the Board that according to RIHC's own property manager, it "had done [its] own cement because [it] wasn't going to hire one of these boats at $4,000 a day to bring the truck out, or to ferry several trucks back and forth." Given the

---

[5] At the abatement hearing, the assessor stated that the increased assessment of island structures is generally offset by the reduced land assessment for island property. RIHC has made clear that it is not challenging the *land* assessment methodology, which actually is favorable to an island property taxpayer. This has led the Town to argue that RIHC's challenge is improper because it is directed toward only one component of the overall valuation. *See Roberts v. Town of Southwest Harbor*, 2004 ME 132, ¶ 4, 861 A.2d 617 (stating that a taxpayer "must demonstrate that his property, *as a whole*, has been valued differently than other comparable properties" (emphasis added)). Because the evidence did not compel the Board to conclude that there was unjust discrimination in the first place, we do not address this alternative argument advanced by the Town.

evidence presented during the abatement hearing, the Board was not compelled to find that island structures are "similarly situated" to mainland structures.

[¶17]  Finally, the rationale offered by the Town for the lower valuations assigned to mainland properties is not arbitrary or unfounded.  *See Petrin*, 2016 ME 136, ¶ 25, 147 A.3d 842.  The certified private assessor hired by the Town to develop the 2010 revaluation applied the 200% multiplier to island buildings based on the higher cost of construction on an island.  His calculations were based on a sales study and consultations with building contractors.  Given this evidence, the Town was entitled to consider the greater cost of constructing a building on an island in its valuation of the buildings on Roque Island.

[¶18]  Because the evidence did not compel the Board to find that the Roque Island property was assessed differently than other similarly situated properties, the Board did not err by denying RIHC's abatement application.

The entry is:

Judgment affirmed.

John B. Shumadine, Esq. (orally), and Peter L. Murray, Esq., Murray, Plumb & Murray, Portland, for appellant Roque Island Gardner Homestead Corporation

Erik M. Stumpfel, Esq., and Jonathan P. Hunter, Esq. (orally), Rudman Winchell, Bangor, for appellee Town of Jonesport

Washington County Superior Court docket number AP-2015-04
FOR CLERK REFERENCE ONLY