MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:    2021 ME 21
Docket:      Ken-20-179
Argued:      February 9, 2021
Decided:     April 8, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

ROQUE ISLAND GARDNER HOMESTEAD CORPORATION

v.

TOWN OF JONESPORT

MEAD, J.

[¶1]  In this consolidated appeal concerning property tax abatement requests made by the Roque Island Gardner Homestead Corporation (RIGHC), the Town of Jonesport appeals from two decisions of the Superior Court.  In the first, the court (Washington County, *Stewart, J.*) vacated a decision of the Town's Board of Appeals (BOA) denying RIGHC's requests for abatement concerning tax years 2015, 2016, and 2018, and remanded the matter to the BOA to make an independent determination of the property's fair market value.  *See* M.R. Civ. P. 80B.  In the second, the court (Kennebec County, *Stokes, J.*) granted RIGHC's petition for judicial review of an adverse decision of the State Board of Property Tax Review (State Board) concerning its request for a tax year 2017

2

abatement and ordered the Town to grant RIGHC's request. *See* M.R. Civ. P. 80C. We affirm both decisions.

## I. BACKGROUND

[¶2]  The facts are drawn from the supported factual findings of the State Board and the BOA, and from the corresponding administrative records. *See Grant v. Town of Belgrade*, 2019 ME 160, ¶ 2, 221 A.3d 112.  RIGHC owns Roque Island off the Jonesport coast. *Roque Island Gardner Homestead Corp. v. Town of Jonesport*, 2017 ME 152, ¶ 3, 167 A.3d 564.  The island is largely taxed as farmland, with the primary exception of a homestead compound consisting of several houses and other buildings.  *See id.*; 36 M.R.S. §§ 1102(4), 1105 (2021).

[¶3]  Over time, RIGHC applied for property tax abatements for tax years 2014 through 2018, with the following results:

- 2014: RIGHC asserted that the Town's use of a 200% "economic obsolescence factor," which increased the assessed value of buildings on the island as compared to comparable mainland buildings, was unjustly discriminatory. *Roque Island*, 2017 ME 152, ¶¶ 5, 10, 167 A.3d 564.  We disagreed and affirmed the Town's denial of RIGHC's 2014 abatement request. *Id.* ¶ 18.  The 2014 tax year is not at issue in the present appeal.

- 2015 and 2016: RIGHC's abatement requests were stayed pending a judicial decision on the 2014 request.  When those requests were heard in 2019, the BOA denied them on the grounds that (1) our decision in *Roque Island* resolved the unjust discrimination claim; and (2) it was not

required to consider RIGHC's overvaluation claim for tax years 2015 and 2016 because that claim was raised for the first time at the hearing and was not included in RIGHC's original abatement applications.

RIGHC appealed to the Superior Court pursuant to M.R. Civ. P. 80B, asserting that the assessments on Roque Island were "grossly excessive and illegal." The court (*Stewart, J.*) found that RIGHC had met its burden to "present evidence of what the just value of its property was and that the assessed value was substantially overrated," vacated the BOA's decision, and remanded for the BOA "to make an independent determination of the fair market value of the Roque Island Property."

- 2018: In the same proceeding in which it denied the 2015 and 2016 abatement requests, the BOA denied RIGHC's abatement request for tax year 2018 after considering its overvaluation argument concerning that year, finding that RIGHC had "failed to meet its burden to demonstrate substantial overvaluation resulting in injustice." The BOA noted that the appraisal on which RIGHC relied addressed only the "primary homestead area" constituting "less than 1% of the island." The BOA concluded that because the appraisal did not address "the fair market value of the excluded lands or the impact of the existence of the rest of the island on the value of [the homestead area]," it was not "indicative of . . . the value of the whole property."

  On appeal, the Superior Court vacated the BOA's decision and remanded for the Board to make an independent determination of Roque Island's fair market value, concluding that RIGHC was not required to show the fair market value of its farmland because it was established by statute, *see* 36 M.R.S. § 1105, and that the appraisal and other evidence RIGHC presented was sufficient to meet its burden.

- 2017: Distinct from the 2015, 2016, and 2018 tax years at issue in the Rule 80B appeal, RIGHC's abatement request for 2017 was based on its challenge to the Town assessors' "correction" of RIGHC's farmland classification application, which resulted in an increase of "farm and housing structures" acreage from 5.7 acres to 10 acres, with a corresponding decrease in the category of "land unsuitable for farmland,"

primarily in the subcategory of "wasteland," which is included in the statutory definition of "farmland." 36 M.R.S. § 1102(4).

The assessors denied the abatement request based on the Town's blanket policy of assigning a one-acre "site lot" to each substantial building, regardless of the actual use of the parcel. Because Roque Island had ten such buildings, its application was adjusted to reflect ten acres assessed as "other land" containing "farm and housing structures."

RIGHC appealed to the State Board, which denied the appeal, concluding that the Town's methodology in assigning ten, one-acre "site lots" to Roque Island was "consistent with a reasonable interpretation of [36 M.R.S.] section 1105" and satisfied the constitutional requirement that property taxes "be apportioned and assessed equally according to [the property's] just value." Me. Const. art. IX, § 8.

RIGHC sought review in the Superior Court pursuant to M.R. Civ. P. 80C. The court (*Stokes, J.*) agreed with RIGHC and directed the Town to grant the 2017 abatement request, concluding that "the Town's good faith effort to equalize the tax treatment of structures brought it into conflict with the Farmland Tax Law [36 M.R.S. §§ 1105, 1108(1) (2021)] because of its one-acre site lot methodology."

[¶4] We consolidated the Town's appeals from the two Superior Court decisions concerning RIGHC's abatement requests for tax years 2015 through 2018.

## II. DISCUSSION

A.    Final Judgment Rule

[¶5] Although the Town's appeal of the Superior Court's Rule 80C decision regarding tax year 2017 is taken from a final judgment, its appeal from the court's Rule 80B decision—remanding to the BOA for further findings

regarding tax years 2015, 2016, and 2018—is not. Accordingly, the Town has the burden of demonstrating that an exception to the final judgment rule applies. *See Salerno v. Spectrum Med. Grp., P.A.*, 2019 ME 139, ¶ 7, 215 A.3d 804. The Town asserts that the judicial economy exception is applicable.

[¶6] We conclude that this is an appropriate case in which to apply the exception, which "may be invoked in those rare cases in which appellate review of a non-final order can establish a final, or practically final, disposition of the entire litigation and the interests of justice require that an immediate review be undertaken." *Cutting v. Down E. Orthopedic Assocs., P.A.*, 2021 ME 1, ¶ 16, 244 A.3d 226 (alterations and quotation marks omitted). We recently explained that

> [g]enerally, we invoke the judicial economy exception when there are particularly unique circumstances in the history of a case such as . . . multiple pending proceedings involving the same party . . . . Thus, we will reach the merits of the case when a decision could end the litigation and there is some additional reason to accept the appeal.

*Id.* ¶ 18 (emphasis, citations, and quotation marks omitted).

[¶7] Here, the two appeals—one of which we would hear in any event as taken from a final judgment—involve the same parties disputing property taxes assessed for the same parcel of land. If we consider the Rule 80B appeal and decide in the Town's favor, then that decision ends that portion of the litigation.

6

If we decide in RIGHC's favor, then the BOA will be required to make an independent determination of Roque Island's fair market value, which is the same determination it will have to make if we dismiss the Rule 80B appeal as interlocutory. Furthermore, the BOA's fair market value determination would not assist us in a potential subsequent appeal from a final judgment raising the issue presented to us here because we would still be required to initially decide whether the Town's assessment was "manifestly wrong" given the record. *See Roque Island*, 2017 ME 152, ¶ 12, 167 A.3d 564 (quotation marks omitted).

[¶8] Accordingly, we will apply the judicial economy exception to the Town's interlocutory appeal from the trial court's Rule 80B decision and turn to a discussion of the 2015, 2016, and 2018 tax years, which are the subject of that decision.

B. Preservation of RIGHC's Overvaluation Claim for 2015 and 2016

[¶9] The Town first contends that RIGHC did not preserve its claim that its property was overvalued for tax years 2015 and 2016. RIGHC's 2015 and 2016 abatement requests explicitly set out an unjust discrimination claim based on the Town's use of a 200% "economic obsolescence" factor; we rejected the same claim concerning the 2014 tax year. *Id.* ¶¶ 5, 10, 18. When the BOA took up the 2015 and 2016 requests following a stay, it denied them on the

grounds that (1) the *Roque Island* decision resolved the unjust discrimination claim; and (2) RIGHC's overvaluation claim, presented for the first time at the hearing, was not properly before the Board and would not be considered because "[a] close examination of the 2015 and 2016 applications show that they do not set forth a claim for substantial overvaluation resulting in injustice."

[¶10]  "[W]e review the Board's decision directly for abuse of discretion, errors of law, and sufficient evidence," *id.* ¶ 11 (quotation marks omitted), and conclude that the BOA's decision declining to consider RIGHC's overvaluation claim for 2015 and 2016 was erroneous.  Although the abatement applications for those years did state an unjust discrimination claim, it was not the only claim advanced.  The applications also asserted that "there is no hint that the 200% assessed value increase was tied to anything to do with valuation," resulting in "an artificially increased value over and above market value" and ultimately a "property tax bill . . . [that] has been inflated"—in other words, a claim that RIGHC's property was overvalued.

[¶11]  Further, the BOA decision does not say that the stay was conditioned on later consideration of a single issue, and, in any event, we have said that "in the context of a tax abatement appeal" the BOA "reviews the decision of a prior decision maker, but does so on an independent review of

8

evidence, *including evidence newly presented at the appellate hearing.*" *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 9, 757 A.2d 773 (emphasis added). The BOA therefore erred in refusing to consider RIGHC's overvaluation claim for 2015 and 2016 and the evidence proffered to support it. Accordingly, we will examine that claim for all three tax years that were the subject of the Rule 80B appeal—2015, 2016, and 2018.[1]

C.    Merits of RIGHC's Overvaluation Claim for 2015, 2016, and 2018

[¶12]  RIGHC's burden is a heavy one because "[a] town's tax assessment is presumed to be valid." *Roque Island*, 2017 ME 152, ¶ 12, 167 A.3d 564 (quotation marks omitted). "To overcome this presumption, [RIGHC] bears the burden of proving that the assessment is 'manifestly wrong' by demonstrating that . . . the property was substantially overvalued and an injustice resulted from the overvaluation." *Id.* (quotation marks omitted). "To meet the initial burden of showing that the assessment was manifestly wrong, [RIGHC] must demonstrate that . . . the judgment of the assessor was irrational or . . . unreasonable in light of the circumstances . . . ." *Yusem v. Town of Raymond*, 2001 ME 61, ¶ 9, 769 A.2d 865. "Impeachment of the assessor's methodology

---

[1]  At the hearing, the BOA considered RIGHC's evidence supporting its 2018 overvaluation claim. RIGHC advised the Board that the same evidence supported its overvaluation claim for the 2015 and 2016 tax years.

alone is insufficient to meet that burden." *Id.* ¶ 13; *Town of Bristol Taxpayers'*
*Ass'n v. Bd. of Selectmen/Assessors for Bristol*, 2008 ME 159, ¶ 3 n.1,
957 A.2d 977 (citing *Yusem*).

[¶13]  Once again, "we review the Board's decision directly for abuse of
discretion, errors of law, and sufficient evidence," and "[b]ecause the Board
concluded that [RIGHC] failed to meet its burden to prove that an abatement
was merited, we will vacate the Board's decision only if the record compels a
contrary conclusion to the exclusion of any other inference."  *Roque Island*,
2017 ME 152, ¶ 11, 167 A.3d 564 (quotation marks omitted).

[¶14]  As an initial matter, we reject the Town's assertion that our
decision in *Roque Island* "forestalls [RIGHC's] challenge to the Town's 200%
economic obsolescence multiplier for buildings."  In *Roque Island*, RIGHC
"challenge[d] the assessment *solely* on the basis of unjust discrimination"
allegedly resulting from the application of the multiplier, a challenge that we
rejected. *Id.* ¶¶ 12, 18 (emphasis added).  Here, RIGHC made it clear at the BOA
hearing that it was not advancing the unsuccessful unjust discrimination claim,
but rather a claim that the 200% multiplier resulted in its property being

10

substantially overvalued.[2] *Roque Island* did not decide that issue, and does not preclude our consideration of it now.

[¶15]  Turning to the merits of the arguments on appeal, we agree with the Superior Court that the Board erred.  The record before the BOA at the hearing compels the conclusion that RIGHC met its burden to demonstrate that the Town's assessment was "manifestly wrong" and that the Roque Island property was "substantially overvalued."  *Id.* ¶ 12 (quotation marks omitted). That record consisted of only two substantial pieces of evidence, both strongly favoring RIGHC: (1) an appraisal conducted by a qualified appraiser opining that the fair market value of the Roque Island homestead was much less than its assessed value, and (2) a packet of three letters—two from contractors with experience doing construction projects on Roque Island and one from the long-time assessor for the City of Portland with responsibility for assessing inhabited islands in Casco Bay—stating that the 200% "obsolescence factor" used by the Town to increase the assessed value of the homestead buildings was significantly higher than real-world conditions warranted.  *See id.* ¶ 5 (quotation marks omitted).  Because RIGHC met its initial burden, the BOA was

---

[2]  Because of the additional cost of building on an island, the Town assesses buildings on Roque Island at a higher value than it would for comparable buildings on the mainland.  *See Roque Island Gardner Homestead Corp. v. Town of Jonesport*, 2017 ME 152, ¶ 5, 167 A.3d 564.

required to "engage in an independent determination of fair market value based on a consideration of all relevant evidence of just value." *Yusem*, 2001 ME 61, ¶ 8, 769 A.2d 865 (alteration and quotation marks omitted). We discuss the record in greater detail to explain why the assessment was manifestly wrong.

[¶16] RIGHC's experienced, certified appraiser opined that the market value of the ten-acre homestead compound[3] with its associated buildings was $2,300,000 for the three tax years at issue. The Town assessed the homestead at more than $4,150,000 for each of those years. The Town's valuation of the land at $1,125,000 as opposed to the appraisal's $1,000,000 valuation accounted for a relatively small part of the difference; the remainder lay in the valuation of the buildings. Concerning that valuation, the Town agreed at the hearing that its "statement of value for the buildings is actually pretty similar to [RIGHC's] statement of building value before the 200% economic obsolescence factor is included."

[¶17] In response to RIGHC's assertion that the 200% factor—which doubles the assessed value of a building to which it is applied—is an arbitrary

---

[3] As discussed *infra* at ¶¶ 25-31, RIGHC challenges the Town's assignment of ten acres to the homestead area. For the purpose of the Rule 80B appeal, RIGHC has assumed that the homestead area comprises ten acres.

number unrelated to the building's actual value, a former assessor for the Town told the BOA that the factor originated with an outside entity's tax revaluation of the Town and "was nothing that any of us assessors did." She explained that the revaluation "reduced land values, per se, on the islands and upped [the value of] the buildings. I [do] not have an answer for . . . why [the outside entity] did that." A current assessor was no more definitive in explaining why the values of RIGHC's buildings were automatically doubled; she said that

> the 200% [factor] got brought in to try to equalize the value of the island properties because . . . it takes more to build on the islands . . . but . . . especially a place like . . . Roque [Island] . . . that's so unique, we don't have anything like that here on the mainland and to make sure that those values are, you know, probably higher . . . I think that's why maybe they put it up to 200% . . . to get . . . the value of those properties where they needed to be.

[¶18] The problem with the Town's application of the 200% multiplier automatically doubling the value of buildings on Roque Island is that on this record there was no evidence before the BOA to establish that the multiplier resulted in an accurate valuation of the buildings and not a purely arbitrary increase in their value. The Maine Constitution requires as a general rule that "[a]ll taxes upon real . . . estate . . . shall be apportioned and assessed equally *according to the just value thereof.*" Me. Const. art. IX, § 8 (emphasis added).

[¶19]  The only evidence before the BOA relating the 200% multiplier to fair market value consisted of the three letters submitted by RIGHC, which all stated that the multiplier resulted in building values that were too high.  None of the letters were mentioned in the BOA's decision.  In the first, a general contractor who was "very familiar with local construction costs" and who had done work on Roque Island explained that because there are good facilities on the island, "Roque [Island] should expect to see construction costs higher than those on the mainland, but . . . not significantly higher . . . . I do not see any conditions at Roque Island under which a doubling of building costs would be warranted."

[¶20]  In the second letter, a builder of thirty-four years' experience who was "quite familiar with local construction costs," and who served as a municipal assessor for six years in a Washington County town near the coast, stated that "[i]n all my years of work [on Roque Island], I have not been involved in any construction activities on Roque which have caused a 100% increase in my normal labor costs, or anything close to it."  He estimated that working on Roque Island added 25-35% to the labor costs of a project.

[¶21]  Finally, RIGHC admitted a letter written by the City of Portland's former assessor, who served in that position for twenty-nine years and who

"[had] been assessing Maine real estate for more than 45 years." He stated that in assessing inhabited islands in Casco Bay in 2018, the City "used the same costs and factors for island property as obtained for property located on the mainland without any upward adjustment based on island location." He added, "I am unaware of any practice among municipal assessors to increase cost estimates for island property by any significant factor to represent assumed increased costs for island construction."

[¶22] Given this record before the BOA, a conclusion that RIGHC met its initial burden to show that its "property was substantially overvalued and an injustice resulted from the overvaluation" is unavoidable. *Roque Island*, 2017 ME 152, ¶ 12, 167 A.3d 564 (quotation marks omitted). Accordingly, on remand the BOA may not simply rely on the 200% multiplier and "must engage in an independent determination of fair market value based on a consideration of all relevant evidence of just value." *Yusem*, 2001 ME 61, ¶ 8, 769 A.2d 865 (alteration and quotation marks omitted).

[¶23] The BOA's denial of RIGHC's appeal on the ground that the appraisal addressed only the ten-acre compound and did not opine on the value of the island as a whole does not alter our conclusion that RIGHC met its burden to demonstrate overvaluation. The BOA acknowledged that "most of the

assessed value of the property is contained in the 10-acre subparcel because of the tax programs in which much of the land on the island is enrolled," an understated finding borne out by the record. In 2018, for example, the Town valued the entire island at $4,626,900, and only $370,580 was attributable to land and buildings not associated with the compound.

[¶24] Although we afford the Town's assessment appropriate deference, *see Roque Island*, 2017 ME 152, ¶ 12, 167 A.3d 564, the BOA could not simply assume without evidence that the existence of other land and buildings on the island justified the large disparity between the assessed and appraised values of the ten-acre compound that represented the great majority of the island's total value. If evidence considered by the Board on remand leads it to conclude that the value of the island as a whole is greater than that of its component parts standing alone, then it may use that evidence-based determination in concert with all of the other evidence to value RIGHC's property appropriately.

D.    Rule 80C Appeal Concerning the 2017 Tax Year

[¶25] RIGHC, as the owner of farmland on Roque Island, was entitled to apply to have that land taxed "based on [its] current use value" rather than its "just value."[4]  36 M.R.S. §§ 1103, 1105 (2021); Me. Const. art. IX, § 8.  The

---

[4] The Maine Constitution provides as a general rule that "[a]ll taxes upon real . . . estate . . . shall be apportioned and assessed equally according to the just value thereof."  Me. Const. art. IX, § 8.  The

16

"current use value" of farmland "may not reflect development or market value purposes other than agricultural or horticultural use" or "value attributable to road frontage or shore frontage," 36 M.R.S. § 1105, and "may not include any increment of value reflecting development pressure," *id.* § 1108(1).

[¶26]  In applying for most of its Roque Island property to be taxed at the special farmland current use rate, RIGHC reported in 2017 that Roque Island had 13.7 acres of "other land" to be taxed at the usual just value rate: 5.7 acres occupied by "farm and housing structures," and 8 acres of roads.  The Town, in accordance with its town-wide policy of allocating a one-acre "site lot" for any substantial structure on a parcel of land,[5] increased the acreage attributable to structures on Roque Island from 5.7 acres to 10 acres and approved the application as amended.

[¶27]  After its abatement request was denied, RIGHC appealed the classification of the disputed 4.3 acres to the State Board, contending that it was

Constitution allows an exception for farmland at the discretion of the Legislature: "The Legislature shall have power to provide for the assessment of the following types of real estate whenever situated in accordance with a valuation based upon the current use thereof and in accordance with such conditions as the Legislature may enact: . . . [f]arms and agricultural lands, timberlands and woodlands . . . ." Me. Const. art. IX, § 8(2)(A).  The Legislature exercised that discretion in enacting 36 M.R.S. § 1105 (2021): "The municipal assessor . . . shall establish the 100% valuation per acre based on the current use value of farmland used for agricultural or horticultural purposes."

  [5]  The Town explained to the State Board that "the one-acre site lot is an allocation rather than a delineation and therefore . . . [it] is not assigned [to] any specific area of a parcel."

entitled to have that land classified as farmland. The State Board disagreed and ruled in favor of the Town, concluding that its methodology of first allocating one-acre lots to buildings on the island—as the Town did for property on the mainland—before assessing remaining farmland "is consistent with a reasonable interpretation of [36 M.R.S.] section 1105 and satisfies Maine constitutional requirements of just value and equality."

[¶28] On RIGHC's appeal pursuant to M.R. Civ. P. 80C, the Superior Court (*Stokes, J.*) concluded that the State Board had erred and directed the Town to grant RIGHC's abatement request for 2017. In resolving the question of which category of land is identified and assessed first—farmland, as asserted by RIGHC, or "site lots," as determined by the Town's policy—the court differentiated between farm structures, taxed at just value, and the land itself. It concluded that allocating an arbitrary one acre of land for each structure "without regard to [the land's] actual use" violated 36 M.R.S. §§ 1105 and 1108(1), which bar consideration of "development or market value purposes other than [the land's] agricultural or horticultural use" and consideration of "any increment of value reflecting development pressure" when valuing farmland. For that reason, the court found that the Town's methodology as

applied in this case was "manifestly wrong." *Roque Island*, 2017 ME 152, ¶ 12, 167 A.3d 564 (quotation marks omitted).

[¶29]  After reviewing the State Board's decision directly, we conclude that the court's decision was correct.  As in the Rule 80B appeal discussed above, we begin our analysis with the presumption that the Town's assessment was valid.  *Id.*  From that starting point,

> we review the decision of the [State] Board directly for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. . . .

> Issues of law . . . are reviewed de novo. . . . [RIGHC] bears the burden of persuasion to demonstrate error.

*Town of Eddington v. Emera Maine*, 2017 ME 225, ¶¶ 14-15, 174 A.3d 321; *see Francis Small Heritage Tr., Inc. v. Town of Limington*, 2014 ME 102, ¶ 11, 98 A.3d 1012.  "We review the meaning of a statue de novo."  *Doe v. Bd. of Osteopathic Licensure*, 2020 ME 134, ¶ 10, 242 A.3d 182.

[¶30]  The State Board's decision overlooks the explicitly stated legislative purpose of the farm tax law:

> It is declared that it is in the public interest to encourage the preservation of farmland and open space land in order to maintain a readily available source of food and farm products close to the metropolitan areas of the State to conserve the State's natural resources and to provide for the welfare and happiness of the inhabitants of the State, that it is in the public interest to prevent the forced conversion of farmland and open space land to more

intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farmland and open space land, and that the necessity in the public interest of the enactment of this subchapter is a matter of legislative determination.

36 M.R.S. § 1101 (2021).

[¶31] It was inconsistent with that strong statement of purpose, declaring that taxation of farmland at its current use value is a "necessity in the public interest," *id.*, for the State Board to sustain the Town's policy of arbitrarily taxing one acre of land at its developed value for each substantial building on Roque Island, regardless of how much of the island is actually farmland. By statute, "[i]f the assessor determines that the land is farmland . . . the assessor *shall* classify it as farmland and apply the appropriate 100% valuations per acre for farmland and that land is subject to taxation under [the farm tax law]." 36 M.R.S. § 1109(1) (2021) (emphasis added). Further, contrary to the rationale of its decision, the State Board's result was not compelled by article IX, section 8 of the Maine Constitution. *See supra* n.4; 36 M.R.S. §§ 1101, 1105, 1108(1) (indicating the Legislature's intent to give farmland special tax treatment notwithstanding factors that would otherwise result in taxing the land at a higher valuation).

20

[¶32] For these reasons, the State Board erred as a matter of law, and the Superior Court correctly found that RIGHC met its burden to show that the Town's assessment methodology, and thus the assessment itself, was "manifestly wrong."[6] *Roque Island*, 2017 ME 152, ¶ 12, 167 A.3d 564 (quotation marks omitted); *see Town of Eddington*, 2017 ME 225, ¶ 14, 174 A.3d 321.

The entry is:

> Order vacating the Jonesport Board of Appeals' decision concerning the 2015, 2016, and 2018 abatement requests and remanding for the Board to make an independent determination of fair market value affirmed. Judgment granting the petition for judicial review and directing the Town of Jonesport to grant the 2017 abatement request affirmed.

---

[6] In unilaterally amending RIGHC's farmland classification application by increasing the "other land: farm & housing structures" category from 5.7 acres to 10 acres, the Town correspondingly decreased the "land unsuitable for farming" category by 4.3 acres, designating 21.2 acres of the remaining 24.2 acres in that category as "wasteland." The remaining three acres constituted land designated as open space on another RIGHC-owned island. By statute, "'Farmland' means any tract or tracts of land, *including . . . wasteland*, of at least 5 contiguous acres on which farming or agricultural activities have [been performed to a sufficient degree]." 36 M.R.S. § 1102(4) (2021) (emphasis added). In its brief, the Town, based on the State's instructions accompanying RIGHC's farmland classification application, "presumes that land unsuitable for farmland is wasteland under [section] 1102." Accordingly, the Town's amendment of RIGHC's application, in addition to increasing the amount of land taxed at the "just value" rate for developed property, decreased the amount of land taxed on its farmland value.

John K. Hamer, Esq. (orally), Rudman Winchell, Bangor, for appellant Town of Jonesport

Peter L. Murray, Esq. (orally), and Sage M. Friedman, Esq., Murray, Plumb & Murray, Portland, for appellee Roque Island Gardner Homestead Corporation

Washington County Superior Court docket number AP-2019-02
Kennebec County Superior Court docket number AP-2019-28
FOR CLERK REFERENCE ONLY