MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 19
Docket:        Cum-12-562
Argued:        September 12, 2013
Decided:       February 11, 2014

Panel:         ALEXANDER, LEVY, MEAD, GORMAN, and <u>JABAR</u>, JJ.[*]

ESTATE OF DANIEL NICKERSON

v.

ALAN CARTER et al.

JABAR, J.

[¶1]  Cecelia Nickerson, as personal representative of the Estate of Daniel Nickerson, appeals from a judgment entered by the Superior Court (Cumberland County, *Warren, J.*) in favor of Alan Carter, D.O., and Mercy Primary Care, after a jury found that Dr. Carter was negligent but was not the legal cause of Daniel Nickerson's death.  The Estate makes several arguments on appeal, contending that the trial court erred by (1) admitting the findings of the medical malpractice screening panel, (2) revealing to the jury the screening panelists' occupations, (3) excluding evidence pertaining to Nickerson's family's medical history, (4) permitting Dr. Carter's counsel to change a peremptory challenge during jury selection, and (5) failing to instruct the jury on the "loss of chance" doctrine.

---

[*]  Silver, J. sat at oral argument but did not participate in the development of the opinion.

2

[¶2]  We agree with the Estate that the Panel Chair's consideration of evidence outside the record violated the Maine Health Security Act (MHSA or Act), *see* 24 M.R.S. § 2854(1) (2013), and Maine's procedural rules, *see* M.R. Civ. P. 80M(g)(9).  Because of these violations, we conclude that the trial court erred in admitting the screening panel's findings and we vacate the court's judgment without addressing the merits of the Estate's remaining arguments.

## I.  BACKGROUND

[¶3]  The evidence in the record supports the following facts, which are viewed in the light most favorable to the jury's verdict.  *See Jacob v. Kippax*, 2011 ME 1, ¶ 2, 10 A.3d 1159.  In December 1993, Dr. Carter began seeing Nickerson as a patient.  As part of an initial visit, Dr. Carter withdrew blood from Nickerson, which revealed that Nickerson's cholesterol level was "moderate[ly] elevat[ed]."  Dr. Carter expressed to Nickerson that his elevated levels may be a "risk factor for developing cardiovascular disease."  Dr. Carter decided that the proper course of action would be to follow up with Nickerson, as needed, with another exam in the next two years.

[¶4]  From 1994 to 1997, Dr. Carter saw Nickerson intermittently.  During that time, Dr. Carter did not order retesting of Nickerson's cholesterol.  In 1997, Nickerson requested that Dr. Carter's office conduct an examination and assist him in completing forms necessary for him to participate in an outdoor-expedition

program. Dr. Carter signed Nickerson's forms but again did not order retesting of his cholesterol levels at that time.

[¶5] In March 2001, Nickerson returned for a physical examination, during which Dr. Carter ordered tests of his cholesterol levels. Nickerson's tests revealed that his cholesterol levels had risen. Dr. Carter sent Nickerson a letter informing him of the results and providing information about corrections he could make to his diet. Although Dr. Carter made a notation to recheck Nickerson's cholesterol levels in six to twelve months, Nickerson was not scheduled for retesting within that time.

[¶6] In 2004, Nickerson's cholesterol levels were "showing improvement," but were "still high." Dr. Carter recommended that Nickerson continue to follow his dietary recommendations and planned to recheck his cholesterol levels in three to six months. However, Nickerson was never scheduled for testing within that time.

[¶7] In May 2006, Nickerson saw Dr. Carter for an unrelated reason. Despite Nickerson's history of elevated cholesterol levels and the nearly two years that had passed since his last visit, Dr. Carter did not order retesting at that time. On July 15, 2006, after kayaking with his wife and a family friend, Nickerson, then forty-eight years old, suffered a fatal heart attack. At the time of his death, one of Nickerson's major coronary arteries was 90-95% blocked, leading the medical

4

examiner to conclude that he died as a result of "[s]evere multifocal coronary atherosclerosis," in other words, a blockage in the arteries of his heart due to cholesterol buildup.

[¶8] On June 1, 2009, in accordance with the MHSA, Nickerson's wife, as personal representative of the Estate, filed a notice of claim against Dr. Carter asserting claims for professional negligence, 24 M.R.S. § 2502(7) (2013), and wrongful death, 18-A M.R.S. § 2-804(a) (2013). *See* 24 M.R.S. § 2853(1) (2013). The Estate also asserted claims against Dr. Carter's employer, Mercy Primary Care, alleging that it was vicariously liable for Dr. Carter's negligent treatment.

[¶9] Pursuant to the MHSA, the Estate was required to first present its claim to the medical malpractice prelitigation screening panel. *See* 24 M.R.S. § 2854(1). On July 13, 2011, the three-member panel conducted a testimonial hearing during which both parties presented expert witnesses on the standard of care and on causation. The screening panel decided unanimously for Dr. Carter, finding that he had not breached the standard of care and that his actions were not the legal cause of Nickerson's death. On July 15, 2011, the Panel Chair notified the parties of the panel's decision, stating:

> The panel was unanimous for [Dr. Carter]. For what it is worth my family physician has never scheduled a follow-up visit for me but, rather, asks me to do it myself. Furthermore, her practice does not schedule more than six months in advance so I have to remember to call every year for my annual exam. THUS, [I] found [Dr. Carter's

expert's] testimony more credible regarding the practices of reasonable physicians.

[¶10]  On August 11, 2011, the Estate filed its complaint in the Superior Court, asserting claims of professional negligence and wrongful death.  *See* 18-A M.R.S. § 2-804(1); 24 M.R.S. § 2502(7).  Pursuant to 24 M.R.S. § 2857(1)(C) (2013), because the panel's findings were "unanimous and unfavorable" to the Estate, the findings were admissible in the subsequent professional negligence action.  Before trial however, the Estate filed a motion in limine, seeking to exclude the screening panel's findings because they were inconsistent with the evidence presented and based on information outside the record.  *See* 24 M.R.S. § 2854(1); *see also* M.R. Civ. P. 80M(g)(9).  The trial court denied the Estate's motion, concluding that Dr. Carter could introduce the findings of the screening panel.

[¶11]  A five-day trial began on October 29, 2012, after which the jury returned a unanimous verdict finding Dr. Carter negligent in his treatment of Nickerson.  However, the jury found that Dr. Carter's negligent treatment was not the legal cause of Nickerson's death, and on November 5, 2012, the court entered judgment for Dr. Carter and Mercy Primary Care.  The Estate then appealed.  *See* M.R. App. P. 2(b)(3).

6

## II. DISCUSSION

[¶12] In the unusual circumstances presented by this case, we must consider the effect of the court's denial of a motion in limine filed by the Estate seeking to exclude the medical malpractice screening panel's findings. We afford trial courts "wide discretion" in making evidentiary rulings, and review for abuse of discretion their rulings on the admissibility of evidence with respect to its prejudicial effect. *See Jacob*, 2011 ME 1, ¶ 14, 10 A.3d 1159 (quotation marks omitted).

A.    Inconsistencies of Screening Panel's Findings

[¶13] The Estate first contends that the screening panel's findings should have been excluded because they were inconsistent with the evidence presented. Primarily, the Estate argues that the screening panel should have found that Dr. Carter's own testimony, as well as the other evidence presented at the hearing, showed that he had breached his duty of care. As a result, the Estate suggests that the screening panel conflated the issues of breach of duty and causation when making its findings. *See* 24 M.R.S. § 2855(1)(A)-(B) (2013).

[¶14] The court could not determine whether the panel's findings were inconsistent with the evidence, however, because the Act requires that the proceedings and evidence before the panel remain confidential. *See* 24 M.R.S. § 2857(1); *see also* M.R. Civ. P. 80M(g)(10) ("[T]he proceedings [and] evidence" presented during "the panel hearing shall be confidential to the extent required by

statute or by order of the court."). Except in limited circumstances, the confidentiality of the proceeding is to remain intact, and therefore "any evidence and statements made by a party or [its] representative during a panel hearing . . . may not otherwise be submitted or used for any purpose in a subsequent court action." 24 M.R.S. § 2857(1)(A).

[¶15] Here, the Estate contends that the findings were inconsistent with the evidence presented. Based on the clear mandate provided by section 2857(1), the trial court did not err in declining to review the evidence presented to determine if the panel's findings were erroneous. As a result, the court did not abuse its discretion in denying the Estate's request to exclude the findings based on its first contention.

B. Consideration of Evidence Outside the Record

[¶16] The Estate also argues that the screening panel, specifically the chairperson, exceeded its authority when it based its findings on evidence that was not presented during the panel hearing.

[¶17] Pursuant to the plain language of the MHSA, medical malpractice screening panel members are to base their findings solely "upon [the] evidence as presented at the hearing, the records and any expert opinions provided by or sought by the panel or the parties." 24 M.R.S. § 2854(1); *see also* M.R. Civ. P. 80M(g)(9) (requiring the screening panel to "make its findings based on the issues and

evidence presented at the hearing"). By requiring the screening panel to make findings based only on the evidence presented at the hearing, litigants are "safeguard[ed] against appointed panelists performing their own independent investigation[s] or deciding [cases] based on issues not addressed by the parties." M.R. Civ. P. 80M Advisory Committee's Note – January, 2009.

[¶18] This restriction on the screening panels' scope of review is consistent with their role as fact-finders and is fundamental to our concept of due process. Although we have never dealt specifically with screening panels, we have recognized in other contexts, namely with respect to administrative agencies, that it is "improper[]" for quasi-judicial decision-makers to rely "on information obtained outside of the record and the proceedings." *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 14, 763 A.2d 1183. In doing so, we recognized that due process requires that agencies proceed exclusively upon matters "in evidence," because absent such a restriction, parties would have no opportunity to cross-examine or to explain adverse evidence. *See, e.g., Pub. Utils. Comm'n v. Cole's Express*, 153 Me. 487, 495-96, 138 A.2d 466 (Me. 1958). Likewise, it is as "elementary, as it is fundamental" to our concept of due process that administrative or adjudicatory bodies' decisions not be based on their own "purported knowledge which is not made a part of the record." *Id*. at 496, 501 (quotation marks omitted).

[¶19]   The same logic and limitations apply to medical malpractice screening panels.  *Compare* 5 M.R.S. § 9059(4) (2013) *with* 24 M.R.S. § 2854(1).  Although screening panels are not administrative agencies, *see Sherburne v. Med. Malpratice Prelitigation Screening Panel*, 672 A.2d 596, 597 (Me. 1996), they are "agenc[ies] of the court," *see Hill v. Kwan*, 2009 ME 4, ¶ 12, 962 A.2d 963, and the screening panel's chairperson is appointed by the Chief Justice of the Superior Court to serve "as [a] competent quasi-judicial officer[]."  Report of Medical Malpractice Subcommittee, Maine Civil Rules Advisory Committee (Sept. 2008) *included with* M.R. Civ. P. 80M Advisory Committee's Note to 2009 promul.; *see also* M.R. Civ. P. 80M(b)(1).  The Panel Chair is then "responsible for the further conduct of the proceedings," M.R. Civ. P. 80M(b)(2), including overseeing the panel hearing and making evidentiary rulings that "will promote the fair, efficient and inexpensive determination of the issues," M.R. Civ. P. 80M(g)(7).

[¶20]   Here, the Panel Chair violated statutory and procedural rules.  In an email to the parties' counsel, notifying them that the screening panel had found against the Estate, the Panel Chair wrote:

> For what it is worth my family physician has never scheduled a follow-up visit for me but, rather, asks me to do it myself. Furthermore, her practice does not schedule more than six months in advance so I have to remember to call every year for my annual exam. *THUS, [I] found [the defendant's expert] more credible regarding the practices of reasonable physicians.*

10

(Emphasis added.)

[¶21] It is clear from the Panel Chair's email that she considered evidence that was never presented during the hearing. What is more significant is the importance that this outside information played in her decision. As illustrated by the Panel Chair's own emphasis—"THUS, [I] found [the defendant's expert's] testimony more credible"—her decision was not based solely on the evidence presented, but was determined by comparing Dr. Carter's treatment of Nickerson to her experiences with her own family doctor.

[¶22] To put the Panel Chair's statement into context, the screening panel heard expert testimony from both sides regarding whose responsibility it was to schedule follow-up examinations. Although we are cognizant of the difficult task that fact-finders face in medical malpractice cases, especially in regard to credibility determinations between competing experts, making a determination on the basis of evidence not presented at the panel hearing is fundamentally wrong and implicates the due process rights of the Estate. Furthermore, considering evidence outside the record is a clear violation of the Maine Health Security Act as well as our procedural rules. *See* 24 M.R.S. § 2854(1); M.R. Civ. P. 80M(g)(9).

[¶23] The Act's statutory scheme does not provide aggrieved parties the opportunity to directly challenge the screening panel's findings. Rather, the proper procedure is to challenge the admissibility of the panel's findings during the

subsequent medical malpractice action.[1]  *See Sherburne*, 672 A.2d at 597. Although the statute designates the panel proceedings as confidential, we emphasized that trial courts retain their "inherent power to protect the integrity of the judicial process by controlling the presentation of evidence at the trial." *Id.*  In doing so, we stated that the statute did not "preclude appropriate judicial consideration" in determining whether the panel's findings "comply with the terms of the Health Security Act."[2] *Id.*

[¶24]  Here, the Estate raised the issue of the panel's findings through its motion in limine and highlighted to the court the panel's failure to "comply with the terms of the Health Security Act."  *Id.*  In the face of a clear violation of statutory and procedural rules, the court abused its discretion by allowing the findings of the screening panel to be admitted in evidence.  As a result of these "highly prejudicial" findings being presented to the jury, *see Irish v. Gimbel*, 1997 ME 50, ¶¶ 11, 14, 691 A.2d 664, we vacate and remand for a new trial in which the screening panel's findings shall be excluded.

---

[1]  In *Sherburne v. Medical Malpractice Prelitigation Screening Panel*, 672 A.2d 596, 598 (Me. 1996), we affirmed the court's dismissal of plaintiff's plenary action to challenge the screening panel's findings. In doing so, we explained that any "challenge of the screening panel's findings" must be presented to the trial court directly during the subsequent "medical malpractice action." *Id.* at 597.

[2]  Such "judicial consideration whether . . . the findings comply with the terms of the Health Security Act," *Sherburne*, 672 A.2d at 597, must be limited to the panel's findings themselves and not the proceedings held before the panel, *see* 24 M.R.S. § 2857(1) (2013) *and* M.R. Civ. P. 80M(g)(10).  The trial court's "inherent power to protect the integrity of the judicial process by controlling the presentation of evidence at the trial," *Sherburne*, 672 A.2d at 597, does not permit it to consider the panel proceedings, which are designated confidential by statute and the Maine Rules of Civil Procedure.

The entry is:

> Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

**On the briefs:**

John P. Flynn, III, Esq., Flynn Law Office, Portland, for appellant Estate of Daniel Nickerson

Philip M. Coffin, III, Esq., and Maureen M. Sturtevant, Esq., Lambert Coffin, Portland, for appellees Alan Carter and Mercy Primary Care

Sandra L. Parker, Esq, Maine Hospital Association, Augusta, for amicus curiae Maine Hospital Association

Robert H. Furbish, Esq., Berman & Simmons, P.A., Lewiston, for amicus curiae Maine Trial Lawyers Association

**At oral argument:**

John P. Flynn, III, Esq. for Estate of Daniel Nickerson

Maureen Sturtevant, Esq., for appellees Alan Carter and Mercy Primary Care