MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 66
Docket:        Pen-23-410
Argued:        November 13, 2024
Decided:       July 24, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

CAROL CUTTING

v.

DOWN EAST ORTHOPEDIC ASSOCIATES, P.A.

STANFILL, C.J.

[¶1]  This is the second appeal in a medical malpractice action in which Carol Cutting sued Down East Orthopedic Associates, P.A., based on events that occurred in 2013.  *See Cutting v. Down E. Orthopedic Assocs., P.A.*, 2021 ME 1, 244 A.3d 226.  Cutting now appeals from a judgment entered by the Superior Court (Penobscot County, *Mallonee, J.*) on a jury's finding that Down East was not negligent.  Cutting challenges the court's admission in evidence at trial of a prelitigation screening panel's finding against her.  Cutting also challenges the court's entry of a judgment as a matter of law on her claim for punitive damages.[1]  We affirm the judgment.

---

[1]  Cutting argues in addition that the judgment must be vacated because many of the sidebar discussions during the trial were not recorded or transcribed, and she challenges the trial court's limitation of her cross-examination of Down East's expert witness.  We are not persuaded by these

2

## I. BACKGROUND

[¶2]  On November 2, 2016, Cutting commenced a medical malpractice screening panel proceeding under the Maine Health Security Act (MHSA) by filing a notice of claim against Down East in the Superior Court.  *See* 24 M.R.S. §§ 2851-2859 (2025);[2] M.R. Civ. P. 80M(b)(1).  The claim was based on the conduct of a Down East employee, a doctor who had treated Cutting's shoulder.  The screening panel proceedings resulted in a unanimous finding by the panel that the doctor's alleged conduct did not "constitute a deviation from the applicable standard of care." *See* 24 M.R.S. § 2855; M.R. Civ. P. 80M(g)(9).

[¶3] On May 30, 2019, about a year after she received notice of the panel decision, Cutting filed a three-count complaint against Down East.[3]  Cutting alleged that on June 20, 2013, she went to Down East to address right shoulder

---

arguments.  *See State v. Milliken*, 2010 ME 1, ¶¶ 13-17, 985 A.2d 1152; *Colony Cadillac & Oldsmobile, Inc. v. Yerdon*, 505 A.2d 98, 99-100 (Me. 1986); M.R. Evid. 403, 611(a).

[2]  In 2019, the Revisor of Statutes made nonsubstantive corrections and administrative changes to some of the MHSA's provisions concerning prelitigation screening panels.  R.R. 2019, ch. 2, §§ B-82 to B-85, correcting 24 M.R.S §§ 2852(3), (5), 2853(2), (6), explanation.  These alterations do not affect our analysis in this appeal.

[3]  While the notice of claim was pending in the Superior Court, Cutting had also filed a complaint in federal court, and she filed a second, separate complaint in federal court in June 2018.  *See Cutting v. Down E. Orthopedic Assocs., P.A.*, 2021 ME 1, ¶¶ 4-5, 244 A.3d 226.  One federal complaint alleged violations of the Americans with Disabilities Act and the Maine Human Rights Act, and the other alleged medical malpractice. *See id.*  In May 2019, the federal court (1) entered a summary judgment in Down East's favor on the discrimination claims and (2) dismissed, for lack of subject matter jurisdiction, the medical malpractice claim.  *Id.* ¶¶ 6-7.  Cutting then filed this complaint in this state court action.

pain. She informed the doctor that she had Tourette's syndrome and experienced motor tics that included "occasional arm movements and pointing." She alleged that during the visit, the doctor moved across the room to distance himself because of Cutting's Tourette's, stating, "I don't want you to hit me." Cutting further alleged that, when obtaining her consent prior to surgery, providers at Down East did not discuss with her how her Tourette's might affect her surgery. She specifically claimed that providers did not tell her that if the doctor found a rotator cuff tear, he would not repair it because the surgery would be "guaranteed to fail" due to the motor tics caused by her Tourette's. On November 13, 2013, the doctor performed a debridement of Cutting's shoulder area but did not repair the rotator cuff after discovering a tear. Cutting continued to experience shoulder pain and sought treatment from different providers; she ultimately underwent surgery to repair the rotator cuff in 2015 and other procedures in 2018.

[¶4] Cutting asserted claims for failure to obtain informed consent as discussed above (Count 1) and medical negligence based on her allegation that the doctor treated her "in an openly hostile, discriminatory, biased, and humiliating manner" (Count 2), and she sought damages including punitive damages for both claims. Later in the proceedings, she also claimed that the

4

doctor falsified her medical record after the procedure to suggest that a more thorough informed consent discussion had occurred. In Count 3, Cutting sought a declaratory judgment, asserting that admission of the prelitigation screening panel's finding at trial would violate her due process rights. To support this claim, Cutting alleged procedural, evidentiary, and substantive problems with the screening panel proceedings.

[¶5] Down East moved to dismiss Cutting's complaint, the court (*Anderson, J.*) denied the motion, and Down East appealed. We dismissed the appeal, concluding that no exception to the final judgment rule applied to enable interlocutory review. *Cutting*, 2021 ME 1, ¶¶ 14-20, 244 A.3d 226. Next, Down East moved for partial summary judgment. The court (*Mallonee, J.*) granted that motion as to Cutting's declaratory judgment claim (Count 3), but it expressly left open the possibility that Cutting could move in limine to exclude the panel finding from evidence.[4]

[¶6] Cutting filed such a motion in limine before the case proceeded to a seven-day jury trial in late September and early October 2023. She argued, among other things, that the panel chair had exhibited bias by stating (in the context of a discussion about how long a panel hearing would take) that the

---

[4] The court otherwise denied Down East's motion for summary judgment.

case was about "just a shoulder" and that the panel had made various prejudicial evidentiary rulings. She also argued that the panel had pre-judged the case in Down East's favor before the panel hearing by offering to decide the case based only on the parties' submissions, if the parties agreed, rather than rescheduling the hearing after it was called off due to a snowstorm. The court denied the motion in limine, and evidence of the panel's finding that Down East was not negligent was admitted during the trial.

[¶7] At the close of the evidence, Down East moved for a judgment as a matter of law on Cutting's punitive damages claim, arguing that no evidence had been presented that could support it under the relevant legal standard. The court granted Down East's motion. The court determined that neither the "allegedly very bad behavior in the exam room" nor the alleged failure to diagnose a rotator cuff injury could rise to the level of malice, ill will, or outrageousness required for the imposition of punitive damages. *See, e.g.*, *Tuttle v. Raymond*, 494 A.2d 1353, 1361-63 (Me. 1985). The court also concluded that even if the jury believed that the doctor had falsified Cutting's medical record after treating her, this conduct could not have caused the harm Cutting alleged and therefore could not support an award of punitive damages.

6

Cutting moved for reconsideration of the court's ruling, and the court, after hearing arguments from the parties, denied that motion.

[¶8]  When discussing jury instructions, Cutting requested that the court provide "something outside of the typical [jury] instruction" that refers to the prelitigation screening panel process as a "summary hearing," and she requested an instruction telling the jury that "a decision was made prior to the [panel] hearing."  The court declined Cutting's request and instructed the jury as follows:

> As a preliminary step in this case, a prelitigation screening panel reached a unanimous finding. That panel process is merely a preliminary procedural step through which malpractice claims proceed. The panel members in this case were [two lawyers and a doctor].

> The panel conducted a summary hearing that was not bound by the rules of evidence. That hearing was not a substitute for a full trial, and it may or may not have included all the same evidence presented at this trial. You are not bound by the panel findings. You must reach your own conclusions based on the evidence presented at this trial.

> The panel proceedings are confidential, which means that the parties may not present evidence about the panel proceedings, and they may not introduce documents from the panel proceedings except to state what you have just been told about the panel process.

The court also instructed the jury to decide first whether Down East was negligent and that it should not reach any determination about damages unless it had found negligence.

[¶9]  After deliberating, the jury determined that Down East was not negligent, and the court entered a judgment for Down East.  Cutting timely appeals.

## II.  DISCUSSION

[¶10]  We first address whether the trial court should have excluded the panel finding from the trial evidence, and we then turn to whether the court erred when it granted Down East's motion for a judgment as a matter of law on Cutting's punitive damages claim.

### A.    Admission of Panel Finding

[¶11]  Cutting argues that the trial court's denial of her motion to exclude the prelitigation screening panel's finding from evidence amounts to a violation of her constitutional right to a trial by jury and a violation of statutes and rules that govern the screening panel process.  She argues that because the panel "decid[ed] the case against [her] before a hearing even occurred," the panel process was biased and deprived her of a meaningful opportunity to rebut adverse evidence during the panel hearing.

8

[¶12] We review for an abuse of discretion the denial of a motion in limine seeking to exclude findings by a medical malpractice screening panel. *See Est. of Nickerson v. Carter*, 2014 ME 19, ¶ 12, 86 A.3d 658. To the extent that constitutional, statutory, or rule interpretation is implicated, we apply de novo review. *See Torres v. Dep't of Corr.*, 2016 ME 122, ¶ 13, 145 A.3d 1040; *Smith v. Hawthorne*, 2006 ME 19, ¶ 18, 892 A.2d 433; *Est. of Nickerson*, 2014 ME 19, ¶¶ 12, 18-22, 86 A.3d 658.

[¶13] "In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury." Me. Const. art. I, § 20; *see Irish v. Gimbel*, 1997 ME 50, ¶ 7, 691 A.2d 664 (*Irish I*). "[A] litigant's right to a jury trial, in general, means the right to have a determination made by the jury on material questions of fact." *Irish I*, 1997 ME 50, ¶ 8, 691 A.2d 664 (quotation marks omitted).

[¶14] Under the MHSA, a medical malpractice screening panel must, "[a]t the conclusion of the [parties'] presentations," make a finding whether the provider was negligent. 24 M.R.S. § 2855(1)(A). The panel is required to make its findings solely "upon [the] evidence . . . presented at the hearing, the records and any expert opinions provided by or sought by the panel or the parties." *Id.* § 2854(1); *see* M.R. Civ. P. 80M(g)(9) ("The panel shall make its findings based

on the issues and evidence presented at the hearing."); *Est. of Nickerson*, 2014 ME 19, ¶ 17, 86 A.3d 658 (explaining that these requirements protect against "appointed panelists performing their own independent investigations or deciding cases based on issues not addressed by the parties" (alterations and quotation marks omitted)). Although proceedings before the panel are generally confidential, 24 M.R.S. §§ 2853(1-A), 2857(1); M.R. Civ. P. 80M(a), a panel's findings on the question of negligence that are "unanimous and unfavorable to the claimant . . . are admissible in any subsequent court action for professional negligence against the [provider] by the claimant based on the same set of facts upon which the notice of claim was filed."[5] 24 M.R.S. § 2857(1)(C); *see id.* § 2855.

[¶15] We have examined in several cases challenges to the admission at trial of prelitigation screening panel findings. In *Irish I*, we scrutinized the constitutionality of an earlier version of the MHSA that required admission of unanimous panel findings "without explanation" to the jury. 1997 ME 50, ¶¶ 7-19, 691 A.2d 664. We held that providing some neutral information about the panel process to the jury was required to preserve the statute's

---

[5] Although not relevant here, if the panel finds unanimously against the *provider* on both negligence and causation, those findings are likewise admissible in a subsequent lawsuit. 24 M.R.S. § 2857(1)(B) (2025).

constitutionality. *Id.* ¶ 11 (deciding that a prohibition on any explanation whatsoever of the panel findings or process "deprived" jurors of "any and all information of the context in which the panel operates" and would "withhold[] information that is essential to the jury's fact-finding role"). We enumerated six pieces of information that must be provided to a jury when panel findings are admitted under 24 M.R.S. § 2857(1), in order to allow the jury to perform its function in conformance with a litigant's right to a trial by jury.[6] *Irish I,*

---

[6] We explained,

> [A] jury will be able to perform its function if the court makes preliminary comments and final instructions that provide the following information:
>
> 1) the panel process is merely a preliminary procedural step through which malpractice claims proceed;
>
> 2) the panel in this case consisted of (the name and identity of the members);
>
> 3) the panel conducts a summary hearing and is not bound by the Rules of Evidence;
>
> 4) the hearing is not a substitute for a full trial and may or may not have included all of the same evidence that is presented at the trial;
>
> 5) the jury is not bound by the finding(s) and it is the jurors' duty to reach their own conclusions based on all of the evidence presented to them; and
>
> 6) the panel proceedings are privileged and confidential. Consequently, the parties may not introduce panel documents or present witnesses to testify about the panel proceedings, and they may not comment on the panel finding(s) or proceedings except to reiterate the information in 1 through 6.
>
> This information provides a basis for the jury to understand the nature of the panel findings and to put the findings in context in evaluating all of the evidence presented at the trial.

1997 ME 50, ¶ 12, 691 A.2d 664. We otherwise upheld the constitutionality of the screening panel process, *id.* ¶¶ 7-19, and we expressly rejected the contention that "the integrity of the jury's function depends on [a plaintiff's] ability to attack the findings by argument or cross-examination of panel members," *id.* ¶ 12.

[¶16] In *Smith*, 2006 ME 19, ¶¶ 3-4, 892 A.2d 433, the screening panel found that the medical care provider was negligent but that the negligence was not the proximate cause of the injury complained of. Only the finding of no proximate cause, however, was admitted during the subsequent jury trial. *Id.* ¶ 6. We concluded that this "asymmetrical" admission of panel findings violated the plaintiffs' right to a trial by jury: "When there are findings favorable to both parties, the admission of only those findings favorable to one party distorts the jury's fact-finding role." *Id.* ¶ 22.

[¶17] In *Estate of Nickerson*, the plaintiff claimed that the provider had breached the standard of care by failing to schedule consistent cholesterol level testing despite indications that such testing was necessary. 2014 ME 19, ¶¶ 3-8, 86 A.3d 658. The panel unanimously found that the provider was not

---

*Irish I*, 1997 ME 50, ¶ 12, 691 A.2d 664. In *Irish v. Gimbel*, 2000 ME 2, ¶¶ 3, 6-7, 743 A.2d 736 (*Irish II*), we rejected an argument that providing this information to the jury violated the separation of powers required by the Maine Constitution.

negligent. *Id.* ¶ 9. In notifying the parties of the panel's finding, however, the panel chair referred to the ordinary practice in an unrelated physician's office as part of the basis of the panel's decision. *Id.* ¶¶ 9, 20. We held that the trial court should have excluded the panel finding from evidence at trial because the panel had clearly relied on evidence outside the record in reaching its decision, in violation of the MHSA. *Id.* ¶¶ 16-24; *see* 24 M.R.S. § 2854(1); M.R. Civ. P. 80M(g)(9).

[¶18] Cutting has not demonstrated that the trial court in this case applied the MHSA unconstitutionally or otherwise erred or abused its discretion when it denied Cutting's motion in limine to exclude the panel findings. According to Cutting, the panel chair offered to reach a decision based on the records that had been filed after the initially-scheduled hearing could not be held because of a snowstorm, but only if both parties agreed. The offer was declined and the parties proceeded to a full hearing before the panel where they presented evidence, and the panel then provided its findings. During the subsequent trial, the court admitted the panel finding pursuant to statute, providing the jury with all of the instructions that we held in *Irish I* are required to protect the right to a trial by jury in this context. *See Irish I*, 1997 ME 50, ¶¶ 6-14, 691 A.2d 664; 24 M.R.S. § 2857(1)(C).

[¶19]  Although Cutting now frames the sequence of events as demonstrating extreme bias, she did not file any objection to the conduct of the panel chair or other members or seek removal of any of the panel members.  *Cf.* M.R. Civ. P. 80M(b)(4), (g)(2).  Her argument that the process prejudiced her relies on an assumption that the panel extended its offer to decide the case on the written records because it had reviewed the filings and pre-judged the case in Down East's favor.  She bases this assumption on no more than her perception that the panel process is generally "skewed in favor of" defendants and almost never results in unanimous findings against them.  Contrary to Cutting's suggestion, however, there is nothing in this record supporting these assertions.  The circumstances here are wholly unlike those in *Estate of Nickerson*, where the panel chair expressly told the parties that the most salient basis for the panel's unanimous finding was something other than the evidence that the parties had submitted.  2014 ME 19, ¶¶ 9, 20-24, 86 A.3d 658.  The trial court did not err or abuse its discretion when it determined that it hadn't "hear[d] anything to suggest or to . . . confirm that the entire process was so undermined that [it] ought to exclude" the panel finding.

14

## B.      Punitive Damages

[¶20] Cutting also argues that the trial court erred when it granted Down East's motion for a judgment as a matter of law on Cutting's claim for punitive damages. Down East argues that the trial record contains no evidence that could give rise to a punitive damages award and, in the alternative, that any error was harmless because the jury found no liability, rendering any questions involving damages academic. "Judgment as a matter of law . . . is appropriate when, viewing the evidence and all reasonable inferences therefrom most favorably to the party opposing the motion, a jury could not reasonably find for that party on an issue that under the substantive law is an essential element of the claim." *Garland v. Roy*, 2009 ME 86, ¶ 17, 976 A.2d 940 (quotation marks omitted); *see* M.R. Civ. P. 50(a). We review a trial court's ruling on a motion for judgment as a matter of law de novo. *Garland*, 2009 ME 86, ¶ 17, 976 A.2d 940; *see also, e.g.*, *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 932 (11th Cir. 2000) (reviewing de novo a trial court's grant of a defendant's motion for a judgment as a matter of law on the issue of punitive damages). In addition, we must consider whether any error was harmless. Under the harmless error standard, "[t]he court at every stage of the proceeding must disregard any error

or defect in the proceeding which does not affect the substantial rights of the parties." M.R. Civ. P. 61.

[¶21] Here, because the jury found that Down East was not liable for medical negligence, the jury could not award any damages at all, let alone punitive damages. "Punitive damages may be awarded only if the plaintiff has also been awarded actual or compensatory damages based on tortious conduct of the defendant." Horton & McGehee, *Maine Civil Remedies* § 4-4(a) at 74 (4th ed. 2004); *see also, e.g.*, *Zemero Corp. v. Hall*, 2003 ME 111, ¶ 11, 831 A.2d 413 ("Although there was evidence to support a punitive damage award, punitive damages are impermissible absent an award of compensatory damages."); *DiPietro v. Boynton,* 628 A.2d 1019, 1025 (Me. 1993) ("Punitive damages . . . will lie only when the plaintiff receives compensatory or actual damages based on the defendant's tortious conduct."); *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 15, 832 A.2d 771. The jury was properly instructed not to consider damages unless it found liability, and the jury's verdict form indicates that it followed this instruction. *Cf. Niedojadlo v. Cent. Me. Moving & Storage Co.*, 1998 ME 199, ¶ 6, 715 A.2d 934 ("We presume that the jury follows the trial court's instructions."). Given the jury's determination that Down East was not negligent, even if the trial court erred in concluding that the evidence

could not support a punitive damages award—a question we need not examine here—the error could not have affected Cutting's substantial rights or the judgment.[7] Any error by the court in granting Down East's motion for a judgment as a matter of law on Cutting's punitive damages claim is harmless. *See Needham v. Needham*, 2022 ME 7, ¶ 16, 267 A.3d 1112; M.R. Civ. P. 61.

The entry is:

Judgment affirmed.

---

Laura H. White, Esq. (orally), and Danielle Quinlan, Esq., White & Quinlan, LLC, Kennebunk, for appellant Carol Cutting

Christopher C. Taintor, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellee Down East Orthopedic Associates, P.A.

Penobscot County Superior Court docket number CV-2016-192
FOR CLERK REFERENCE ONLY

---

[7] Cutting speculates that an error could be prejudicial because jurors with little appetite for compensating her (based on an improper assumption that insurance paid her medical bills) might still have imposed punitive damages to deter future similar conduct by the doctor. She also argues that because she told the jurors during opening statements that they would be considering punitive damages, and then Down East told the jurors during closing arguments that they could not consider awarding punitive damages, the jurors may have incorrectly assumed that the *court* did not think the evidence supported her *negligence* claim and might have been improperly influenced by that misimpression. We find no merit to this speculation. Cutting made the strategic choice to discuss punitive damages in her opening statement, and the prejudice she posits could only result from the jury failing to follow the court's instructions. The jury, finding no liability, had no occasion to consider damages at all.